**J.C.B. SUPER MARKETS, INC.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America, and United States Department of Agriculture, Defendants-Appellees.**

**No. 414, Docket 75–6063.**

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1976.

Decided March 2, 1976.

Grover R. James, Jr., Buffalo, N. Y. (Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y.), for plaintiff-appellant.

Theodore J. Burns, Asst. U. S. Atty., Buffalo, N. Y. (Richard J. Arcara, U. S. Atty., W. D. N. Y., Buffalo, N. Y.), for defendants-appellees.

Before HAYS, MULLIGAN and GUR-FEIN, Circuit Judges.

MULLIGAN, Circuit Judge:

J.C.B. Super Markets, Inc. (JCB) brought this action under 7 U.S.C. § 2022[1] in the United States District Court for the Western District of New

---

1. § 2022. Administrative and judicial review. Whenever—

        .        .        .        .        .

(b) a retail food store or a wholesale food concern is disqualified under the provisions of section 2020 of this title   .   .   .

(c)   .   .   .   notice of such administrative action shall be issued to the retail food store or wholesale food concern involved.   .   .   .
If the store or concern feels aggrieved by such final determination he may obtain judicial review thereof by filing a complaint against the United States in the United States district court for the district in which he resides or is engaged in business   .   .   .   .
The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue.   .   .   .

York to obtain judicial review of its disqualification by the United States Department of Agriculture (USDA) from participation in the Food Stamp Program (7 U.S.C. § 2011 et seq.) for a period of thirty days because of violations by JCB in accepting food stamps for non-food items. On December 15, 1972, the Hon. John T. Curtin, now Chief Judge, denied USDA's motion for summary judgment, 57 F.R.D. 500, and conducted a trial de novo on July 30 and 31, 1973. In a decision and order dated June 10, 1975, he directed entry of judgment in favor of the defendants dismissing the complaint. An application for stay of the judgment pending this appeal by JCB was granted. We affirm the judgment below.

I

JCB operates a supermarket at 409 Niagara Street, Buffalo, New York in an area which has a large percentage of welfare recipients. In early 1973 some ten-and-one-half per cent of its business consisted of food stamp sales. JCB was authorized to participate in the food stamp program (7 U.S.C. § 2011) in March, 1966 when it was operated by its original owners. On March 30, 1968, Joseph Perna and his associates, the present owners, purchased the outstanding stock of the corporation. An approved retail food concern can accept food stamps only for food or food products for home consumption except alcoholic beverages and tobacco (7 U.S.C. § 2012(b)). USDA shoppers were able to obtain from JCB ineligible non-food items on September 1 and October 4, 1967 and February 2, 1968. Store personnel were given warnings in each case and JCB was advised in writing of the violations. The court below, while admitting evidence of these prior violations, noted that USDA, in the administrative proceedings which preceded this action, did not charge this prior history against the present proprietors. On October 23, 1968, however, a field representative of USDA observed JCB's store manager, John Cusack, make an ineligible food stamp transaction. The agency sent an official warning letter to the store addressed to the attention of Joseph Perna advising him that such a violation would result in a loss of authorization to accept food stamps and further warning that visits would be made in the near future to determine if the store was in compliance with the regulations.

Annie Mae Crum, a USDA investigative aide, "shopped" the store on March 25, 26 and 27, 1969 and on each occasion purchased with food stamps such ineligible articles as six-packs of beer, a knife, moth balls and shoe laces. The ineligible list was prepared by Solomon Goodman who accompanied Miss Crum on her visits to the supermarket; he remained in his car outside the store and checked the purchased items and obtained her descriptions of the clerk. As a result of the purchases, USDA notified JCB on May 14, 1969, in writing, charging that on March 25 and 26, 1969, Betty Gainer, a clerk in the store, had made food stamp sales for ineligible articles and that the store manager on March 27, 1969 had committed a similar offense. Mr. Perna submitted a "statement in mitigation" on May 19, 1969. The Buffalo office of USDA recommended a thirty-day suspension from the program to the District Director who in turn recommended a sixty-day suspension. JCB then appealed to the Food Stamp Review Officer who met with JCB officials and considered written arguments on JCB's behalf. The period of suspension was ultimately fixed at thirty days and the present de novo action ensued.

II

On appeal, JCB argues that the Government failed to prove by sufficient evidence the identity of the clerks who made the sales which were the basis for the disqualification imposed. We note that the clerks involved have not been charged with any offense and their identity is not crucial here. The disqualification section (7 U.S.C. § 2020) is directed to the store and the required finding is that "such store or concern" has violated

any provision of the statute. The record presents overwhelming evidence that the unauthorized food coupon purchases were made on the dates charged in the JCB store. Both Miss Crum and Mr. Goodman testified in detail about each transaction and Judge Curtin found as a fact that "the shoppings of March 25, 26 and 27, 1969 were made and that on these occasions the investigative aide for the Department of Agriculture purchased the ineligible non-food items charged." We cannot reasonably characterize this finding as "clearly erroneous." Fed.R.Civ.P. 52(a). We note that JCB, does not dispute the dates, times and place of the violations or the amount or character of the sales. Although the identity of the clerk is not essential to the Government's case, it is significant that neither Miss Gainer nor Mr. Cusack, according to Mr. Perna's own testimony, ever denied making the sales.

■ JCB further argues that according to Miss Crum's testimony, the March 26 sale cannot be properly charged to it since Miss Gainer told the witness that she was not allowed to make it, was "not supposed to let me have those items . . . but she would let me have them that day." Appellant's position is that the *respondeat superior* principle is not applicable where the agent is advancing his own rather than the corporation's interest. The statement relied upon, however, is equivocal; it may have meant that Miss Gainer knew that she was violating the law rather than the instructions of her employer. In any event, since she was clearly acting within the scope of her authority, receiving food stamps for the benefit of her employer, JCB, and since she derived no personal benefit from the transaction, there is no reason to depart here from traditional agency principles.[2]

■ The suggestion that the employee's wrongful act did not advance the interests of the employer and therefore should not be imputed to it entirely overlooks the basic concept of *respondeat superior*. Presumably no tortious act by an agent redounds to the benefit of the principal where the latter is held responsible for the damage which results. Yet if this reasoning were followed no principal would ever be liable. Obviously, the corporate entity here can only act through its agents and there is no question but that both Miss Gainer and Mr. Cusack were authorized to make sales. If the fact that they were not authorized to make illegal sales would exculpate the employer, it would be practically impossible to impose any penalties under the statute. The precise point was decided against a retailer in *Marbro Foods, Inc. v. United States,* 293 F.Supp. 754 (N.D. Ill.1968).

■ Appellant further argues that this is not a case of awarding actual damages to a third party because of the tortious conduct of an agent but involves a punitive or penal sanction so that normal *respondeat superior* liability should not be imposed. We have necessarily recognized the general rule that where punitive damages are to be imposed, the principal must be shown to be somehow involved in the wrongdoing. *Fort v. White,* 530 F.2d 1113 (2d Cir. 1976). We do not think the issue here is analogous. JCB had been authorized to participate in the Food Stamp Program which has the laudable aim of raising the nutritional levels of low income families. The abuse of that program by employees authorized to act by JCB suffices to inculpate the corporation. Cf. *United States v. Illinois Cent. R. R.,* 303 U.S. 239, 244, 58 S.Ct. 533, 535, 82 L.Ed. 773, 777 (1938). In any event, it is established in the record below that Mr. Perna had been advised of the previous October, 1968 infraction and further had

2. The cases relied upon by appellant are not in point. In *Standard Oil Co. v. United States,* 307 F.2d 120 (5th Cir. 1962) corporate defendants were not held responsible for the acts of employees where the illegal oil sales were provoked by the bribes of a third party and were not made for the benefit of the corporations.

In both *NLRB v. Glenn L. Martin-Nebraska Co.,* 141 F.2d 371 (8th Cir. 1944), and *Egan v. United States,* 137 F.2d 369 (8th Cir.), cert. denied, 320 U.S. 788, 64 S.Ct. 195, 88 L.Ed. 474 (1943), the corporate defendants were held responsible for acts of employees or officers which benefited the company.

been alerted that future inspections would be made. Moreover, the evidence to establish that JCB had instructed its employees with respect to the regulations involved is vague at best. Thus, Mr. Perna testified that JCB personnel were trained in food stamp procedures but in response to the question, "And who trains them?", he replied:

A. Well, it's,—by the time they reach the point where they do have this responsibility, they have probably trained themselves and then we check to see that they do know it thoroughly.

Q. How do they go about training themselves?

A. Well, if they start out as a stock boy, it is unnecessary for us to train them on the Food Stamp Program, so in their observations . . . while they are working there and from word of mouth and conversation in the coffee area . . . .

On the basis of this evidence, it is clear that JCB cannot be exculpated on the theory that it was blameless and unaware of the challenged activities of its clerks.[3]

■ JCB finally argues that this court should not be bound by either the penalty fixed by Judge Curtin or USDA if this court finds that the Government has failed to establish some or all of the violations claimed. Since we find that the court below properly sustained the violations charged, we have no reason to review the penalty which was well within the three-year period fixed by the regulatory provision, 7 C.F.R. § 272.6(a). Whether the district court had jurisdiction in the first place to review the agency penalty is a question which has not been decided in this court and which has created divergent views in other circuits.[4] We need not address it here since Judge Curtin adopted the more liberal standard which permits such review and found that USDA had not abused its discretion. Since the court below applied the standard more favorable to the appellants, there is no basis for complaint on appeal.

Affirmed.

---

3. It is interesting to note that Mr. Perna testified that when ineligible purchases were denied, many times the customer walks out leaving all the merchandise at the check out point. The store clerk then has to place the merchandise on the shelves which takes "an awful long time." His explanation for Mr. Cusack's action was "the only reason I think that he got nailed . . . is his enthusiasm and eagerness to the company in trying to get people moving out of the store in a hurry."

4. Compare *Martin v. United States,* 459 F.2d 300 (6th Cir.), cert. denied, 409 U.S. 878, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972); *Save More of Gary, Inc. v. United States,* 442 F.2d 36 (7th Cir.), cert. dismissed, 404 U.S. 987, 92 S.Ct. 535, 30 L.Ed.2d 549 (1971) (judicial review limited to the merits of the case), with *Goodman v. United States,* 518 F.2d 505 (5th Cir. 1975); *Cross v. United States,* 512 F.2d 1212 (4th Cir. 1975) (en banc) (judicial review includes review of sanction imposed).