Donald KULKIN, etc., Plaintiff,
Appellant,

v.

Robert BERGLAND et al., Defendants,
Appellees.

No. 80–1093.

United States Court of Appeals,
First Circuit.

Argued May 6, 1980.

Decided July 15, 1980.

---

Constance A. Fitzgerald, Boston, Mass., with whom DiMento & Sullivan, Boston, Mass., was on brief, for plaintiff, appellant.

Charles K. Mone, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for defendants, appellees.

* Sitting by designation.

1. Section 2023 specifies the procedure for obtaining judicial review of a final administrative determination disqualifying a retail store from participation in the food stamp program. A complaint against the United States may be filed in state or federal court. "The suit . . .

Before CAMPBELL and BOWNES, Circuit Judges, and DAVIS,* Judge, U.S. Court of Claims.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff, president of The Brothers Supermarket, Inc., challenges his store's one-year disqualification from participation in the food stamp program. Disqualification resulted from the Department of Agriculture's determination that non-food items had been purchased with food stamps in violation of the Food Stamp Act. Pursuant to 7 U.S.C. § 2023 (Supp. I 1977), plaintiff brought a complaint in the district court seeking a trial de novo.[1] The court granted the government's motion for summary judgment, and plaintiff appealed. Plaintiff now argues that the court should not have granted summary judgment because there were disputed material facts both as to the existence of the alleged violations and as to the propriety of the penalty imposed.

### 1. The Violations

In support of its motion for summary judgment, the government submitted an affidavit from a Food and Nutrition Service (FNS) compliance officer. The officer stated that he had visited The Brothers Supermarket on six occasions from March 27, 1978 to April 18, 1978, each time exchanging food stamps for non-food items. On two of the six visits, the ineligible articles were purchased from Mr. Sam Kulkin, the plaintiffs's brother. The other four times the cashier was Ms. Knight. The ineligible articles were enumerated and included bleach, detergent, bathroom tissue, cigarettes, and floor wax. At no time, the officer stated, did either cashier challenge his improper use of food stamps.

Plaintiff filed a counter-affidavit, but did not therein deny that any of the

shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue. If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence."

alleged purchases had taken place. Rather, he sought to exonerate himself personally from complicity in any illegal actions. He stated he had read all directives issued by the Department of Agriculture and had instructed all three of his employees (*i. e.*, his wife, his brother, and Ms. Knight) what items could and could not be bought with food stamps. He had been convalescing at the time of the alleged violations and hence not in the store, but had "at no time . . . personally violated [the Act] . . . authorize[d] or consent[ed] to or acquiesce[d] in any violation of the terms of the Food Stamp Program," and "was not aware that this conduct of the employees was going on."

■ Plaintiff's response was insufficient to withstand the government's motion for summary judgment. Plaintiff did not, as is required under Fed.R.Civ.P. 56(e),[2] "set forth specific facts showing that there is a genuine issue for trial." Missing is any adequate contradiction of the violations attested to by the compliance officer. While plaintiff denied having personally violated the Act, there were no affidavits of denial from the store personnel identified in the government's affidavit.[3] Plaintiff's personal non-involvement would not prevent his store's disqualification. The disqualification section, 7 U.S.C. § 2021 (Supp. I 1977), requires only "a finding . . . that such *store* . . . has violated any of the provisions of [the Food Stamp Act] or the regulations issued pursuant to [the Act]." (Emphasis added.) An improper sale by a cashier is sufficient to establish a violation. *See J.C.B. Super Markets, Inc. v. United States*, 530 F.2d 1119 (2d Cir. 1976); *Save More of Gary, Inc. v. United States*, 442 F.2d 36 (7th Cir.), *cert. dismissed*, 404 U.S. 987, 92 S.Ct. 535, 30 L.Ed.2d 549 (1971). Summary judgment was properly entered on the merits.

## 2. *The Sanction*

The district court took the view that once having upheld the agency's findings on the issue of violation, it had no authority to review the sanction imposed. The court observed that the one-year disqualification was within limits allowed under the regulation. It went on to state that were it entitled to review the sanction, it would

2. Fed.R.Civ.P. 56(e) provides

"(e) FORM OF AFFIDAVITS; FURTHER TESTIMONY; DEFENSE REQUIRED. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

3. We are aware of the correspondence plaintiff emphasized during oral argument. In a letter to the Department of Agriculture, plaintiff stated he "[could] not believe that the alleged violations [had taken] place in [his] establishment" and he "specifically den[ied] any wrongdoing." This general denial which, because plaintiff was not present during the alleged violations, was not based on personal knowledge does not meet the standard of Fed.R. Civ.P. 56(e).

Plaintiff's reliance on *Saunders v. United States*, 507 F.2d 33 (6th Cir. 1974), is misplaced. There, because the papers the government filed in support of its motion for summary judgment did not comply with Fed.R.Civ.P. 56(e), plaintiff was not required to respond. *Id.*, 35, 36. Here, in contrast, the government's motion was properly supported. Nor is plaintiff aided by *J.C.B. Super Markets, Inc. v. United States*, 57 F.R.D. 500 (W.D.N.Y.1972), where the government's motion for summary judgment was denied. There, it appeared from the administrative record that the cashiers had stated they knew what items could and could not be exchanged for food stamps, had removed ineligible items from orders in the past, and had attributed the improper sales alleged to carelessness. Plaintiff here made no such showing, and we therefore need not decide whether summary judgment should be denied were a showing in opposition along the above lines proffered.

conclude that "the one-year disqualification, though possibly burdensome, did not amount to an abuse of administrative discretion." Plaintiff contends that under 7 U.S.C. § 2023 (Supp. I 1977), the court should have invited him to develop the record, and then, applying FNS Instruction 744–9 and the Department's regulations, should have determined whether, on the record as a whole, the agency had abused its discretion in determining the penalty. While we agree with plaintiff that a district court should review the sanction to the extent explained *infra* at pp. 184–186, we are satisfied this was properly done here and that summary judgment was appropriate on the record before the court.

■ Generally, administrative remedies or sanctions are subject to a very limited judicial review. Review must be in accordance with " 'the fundamental principle . . . that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy "the relation of remedy to policy is peculiarly a matter for administrative competence." ' " *Butz v. Glover Livestock Commission Co., Inc.*, 411 U.S. 182, 185, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973) (quoting from *American Power Co. v. SEC*, 329 U.S. 90, 112, 67 S.Ct. 133,

145, 91 L.Ed. 103 (1946). An agency's choice of sanction is not to be overturned unless the reviewing court determines it is " 'unwarranted in law . . . or without justification in fact . . .' " *Id.*, 411 U.S. 185–86, 93 S.Ct. 1458.[4] "The court may decide only whether, under the pertinent statute and relevant facts, the [agency] made 'an allowable judgment in [its] choice of the remedy.' " *Id.*, 189, 93 S.Ct. 1459 (quoting from *Jacob Siegel Co. v. FTC*, 327 U.S. 608, 612, 66 S.Ct. 758, 760, 90 L.Ed. 888 (1946)).

While the de novo provision of the Food Stamp Act raises certain problems, it does not, in our view, call for a departure from the usual standard of review concerning sanctions. The Secretary of Agriculture, not the courts, is charged under the statute with effecting an efficient enforcement scheme. 7 U.S.C. § 2021 (Supp. I 1977); 7 U.S.C. § 2013(c) (Supp. I 1977).[5] To be sure, the judicial review section of the Food Stamp Act, 7 U.S.C. § 2023 (Supp. I 1977), authorizes the reviewing court to conduct a "trial de novo" to "determine the validity of the questioned administrative action in issue."[6] We read this language as including some review of the "validity" of the sanction, but believe the court must still be guided by the concepts implicit in the *Butz*

---

4. The Fourth Circuit has equated the *Butz* standard with the arbitrary, capricious, abuse of discretion standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A):

"The standard of review which is employed in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) . . . is that the court shall decide whether the administrative sanction is 'arbitrary or capricious.' Section 2022 itself requires the district court to review the sanction for 'validity.' As recently reiterated in *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185–186, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973), 'the Secretary's choice of sanction . . . [is] not to be overturned unless . . . it [is] "unwarranted in law or . . . without justification in fact . . . ." '

"We deem all three of these expressions synonymous and they define the due process which we hold must be afforded. To be 'valid,' a sanction must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact." (Footnote omitted.)

*Cross v. United States*, 512 F.2d 1212, 1218 (4th Cir. 1975).

5. Section 2021 authorizes the imposition of sanctions against stores "violat[ing] any of the provisions of [the Act] or the regulations issued pursuant to [the Act]." Disqualification from participation in the food stamp program is to be "for such period of time as may be determined in accordance with regulations issued pursuant to [the Act]." The Secretary's regulations provide for disqualification "for a reasonable period of time not to exceed three years." 7 C.F.R. § 278.6(a) (1979); 7 C.F.R. § 272.6(a) (1978).

Section 2013(c) of the Act authorizes the Secretary to "issue such regulations consistent with [the Act] as the Secretary deems necessary or appropriate for the effective and efficient administration of the food stamp program . . . . ."

6. *See* note 1 for material portions of text of 7 U.S.C. § 2023 (Supp. I 1977).

*v. Glover Livestock Commission Co.* standard. *Accord Studt v. United States,* 607 F.2d 1216, 1218 (8th Cir. 1978); *Nowicki v. United States,* 536 F.2d 1171, 1177–78 (7th Cir. 1976), *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1103, 51 L.Ed.2d 537 (1977); *Goodman v. United States,* 518 F.2d 505, 511–12 (5th Cir. 1975); *Cross v. United States,* 512 F.2d 1212, 1217–18 (4th Cir. 1975) (en banc); *Martin v. United States,* 459 F.2d 300 (6th Cir.), *cert. denied,* 409 U.S. 878, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972).[7]

■ There are, of course, two components to an administrative decision such as the one challenged here—a "determination that a store has violated the law or the regulations" and "a determination of a period during which the store will be disqualified." *Goodman v. United States,* 518 F.2d 505, 509 (5th Cir. 1975). While the former component is mainly factual, the latter involves not only an ascertainment of the factual circumstances surrounding the violations but also the application of administrative judgment and discretion. We think the de novo judicial review provision, a procedure for determining facts, is not aimed at displacing the agency's role regarding the policy components of the latter.[8] *But see Cross v. United States,* 512 F.2d 1212, 1219–21 (4th Cir. 1975) (Widener, J., concurring) (court is to make its own independent judgment as to the term of disqualification); *Martin v. United States,* 459 F.2d 300, 302 (6th Cir. 1972) (Edwards, J., dissenting). From a practical standpoint, it would not make sense for a court to substitute its judgment for that of the agency charged with administering the food stamp program as to the appropriate penalty for a given violation. The agency, in contrast to a court, deals with the relationship of penalty to violation on a frequent basis. If the myriad federal and state[9] courts were to determine the penalty, uniformity and coherence of administration would be difficult to achieve. We find nothing in section 2023 or its legislative history indicating a departure from the usual allocation of functions between court and agency vis-a-vis the assessment of sanctions was intended. Hence, we conclude the *Butz v. Glover Livestock Commission Co.* standard controls.[10]

7. On the surface, the Sixth Circuit opinion in *Martin v. United States,* 459 F.2d 300 (6th Cir.), *cert. denied,* 409 U.S. 878, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972), may appear to disclaim all judicial review over the administrative sanction. The court stated that the review provision of the Food Stamp Act "authorizes a review only on the merits of the case, and not on the period of disqualification," *id.,* 301; once the district court determines the alleged violations occurred, its jurisdiction ends, *id.,* 302. However, the court, citing *G.H. Miller & Co. v. United States,* 260 F.2d 286, 296 (7th Cir. 1958), *cert. denied,* 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 (1959), and *Eastern Produce Co. v. Benson,* 278 F.2d 606, 610 (3d Cir. 1960), also stated that sanctions imposed by the Secretary of Agriculture under the Commodities Exchange Act and the Perishable Agriculture Commodities Act "have been held to be not subject to judicial review," and it concluded there was "no substantial difference between the review provided by [the former] Acts and that provided by the Food Stamp Act." *Id.,* 302. The *G.H. Miller* and *Eastern Produce Co.* cases do not so hold, however; rather, they essentially apply the deferential standard of review subsequently restated in *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185, 93 S.Ct. 1455, 1457, 36 L.Ed.2d 142 (1973).

8. Or, as stated in the legislative history of the 1977 amendments,

"Review of the factual determination that a violation occurred is normal grist for the courts; review of the length of highly discretionary a sentence [sic] of disqualification is not."

H.R.Rep.No.95–345, 95th Cong., 1st Sess. 398, *reprinted in* [1977] U.S.Code Cong. & Admin. News, pp. 1941, 2327.

9. A plaintiff may file an action challenging the administrative determination in state court. 7 U.S.C. § 2023 (Supp. I 1977).

10. A House Report on the 1977 amendment to the Food Stamp Act states

"The Committee wants to go on record as noting that, when there is imposition of disqualification for such period of time as may be determined in accordance with regulations (and the regulations permit disqualification for a reasonable period up to three years) pursuant to section 12 of the bill, the Committee does not intend that, in the trial de novo in the United States district court or state court of the final administrative determination of disqualification, the sanction or period of disqualification imposed would itself be subject to judicial review as several

■ In the present case, the court determined that the one-year disqualification, "though possibly burdensome, did not amount to an abuse of administrative discretion." Since this is not a case where the factual underpinnings upon which the administrative choice of sanction rests were significantly controverted, *cf. Cross v. United States,* 512 F.2d at 1218; *but see Cross,* 512 F.2d at 1227 (Russell, J., dissenting), we see no triable issue of fact concerning the sanction on which plaintiff was entitled to an evidentiary hearing. The only issue was whether the penalty imposed by the agency was unwarranted; even taking plaintiff's affidavit and such of the administrative record as was before the court at face value, we think the district court could conclude, as it in essence did, that these facts would not warrant overturning the agency's choice of sanction.

Plaintiff's next contention is that a civil money penalty rather than a period of disqualification should have been imposed. He bases this argument upon the rather tortuous history of certain food stamp regulations which were promulgated in furtherance of the 1977 amendments to the Food Stamp Act. Prior to 1977, the penalty section of the Act provided only for disqualification and not for money fines. Food

courts have held that it is. See *Goodman v. United States,* 518 F.2d 505 (5th Cir. 1975) and *Cross v. United States,* 512 F.2d 1212 (4th Cir. 1975) (en banc). But see *Martin v. United States,* 459 F.2d 300 (6th Cir.), *cert. denied,* 409 U.S. 878, [93 S.Ct. 129, 34 L.Ed.2d 131] (1972) and *Save More of Gary, Inc.,* 442 F.2d 36 (7th Cir.), *cert. dismissed,* 404 U.S. 987 [92 S.Ct. 535, 30 L.Ed.2d 549] (1971). The trial de novo as set forth in section 14 should be limited to a determination of the validity of the administrative action, but not of the severity of the sanction." H.R.Rep.No.95–345, 95th Cong., 1st Sess. 397–98, *reprinted in* [1977] U.S.Code Cong. & Admin.News 1941, 2326–27. While the report implicitly approves the result in the *Martin* case and disapproves *Goodman* and *Cross,* the three cases do not differ that much as to the standard of review, *see* note 7 and accompanying text, although there may be a disagreement as to the application of that standard to a given situation. Compare the majority opinion in *Cross* with Judge Russell's dissent.

Stamp Act of 1964, Pub.L. No. 88–525, § 11, 78 Stat. 707 (1964) (prior to 1977 amendment). The 1977 amendment added a provision for money penalties as an alternative in certain instances. The disqualification section now reads

"Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, or subjected to a civil money penalty of up to $5,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter. Such disqualification shall be for such period of time as may be determined in accordance with regulations issued pursuant to this chapter. The action of disqualification or the imposition of a civil money penalty shall be subject to review as provided in section 2023 of this title."

7 U.S.C. § 2021 (Supp. I 1977). Regulations to implement this section were promulgated effective January 1, 1979. 43 Fed.Reg. 43277–43279 (Sept. 22, 1978); 7 C.F.R. § 278.6 (1979).[11]

11. The pertinent regulation provides, in material part,

"278.6 Disqualification of retail food stores and wholesale food concerns, and imposition of civil money penalties in lieu of disqualifications.

(a) *Authority to disqualify or subject to a civil money penalty.* FNS may disqualify any authorized retail food store or authorized wholesale food concern from further participation in the program for a reasonable period of time, not to exceed 3 years, as FNS may determine, if the firm fails to comply with the Food Stamp Act or this part.

. . . . .

FNS may, in lieu of a disqualification, subject the firm a to [sic] civil money penalty of up to $5,000 for each violation if FNS determines that a disqualification would cause hardship to participating households.

. . . . .

(g) *Criteria for civil money penalty.* FNS may impose a civil money penalty in lieu of disqualification only when the firm subject to

Plaintiff argues he should be accorded an opportunity to show his store's disqualification "would cause hardship to food stamp households." The government takes the position that because the violations and most of the administrative proceedings occurred before the promulgation of the implementing regulation, 7 C.F.R. § 278.6 (1979) which established the criteria for civil penalties, money penalties should not be considered in this case.

The pertinent chronology is as follows. The violations occurred in March and April 1978. The initial administrative decision to disqualify plaintiff's store was made in September 1978. Plaintiff immediately appealed that decision to the Food Stamp Review Officer. Thus, the violations and initial administrative decision to disqualify took place before the January 1, 1979 effective date of 7 C.F.R. § 278.6. The Food Stamp Review Officer, however, did not render his decision denying plaintiff's appeal until January 24, 1979.

The Department of Agriculture has taken the position that because application of the money penalty regulation to cases already in progress as of January 1, 1979 would entail much delay and redetermination while the agency collected the information necessary for a proper application of the regulation—a comparison of the line of goods and prices at redemption outlets near the violator's store—the regulation will only be applied to violations occurring after January 1, 1979.

■ We hold that the Department did not act improperly in refusing to apply to plaintiff the money penalty provision in lieu of disqualification. The Secretary of Agriculture was authorized to implement the money penalty provision in an orderly fashion. The implementation section of the Food Stamp Act of 1977, Pub.L. No. 95–113, § 1303, 91 Stat. 979 (1977), provides, in material part,

> a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other

"SEC. 1303. (a) The Secretary of Agriculture shall implement the Food Stamp Act of 1977 as expeditiously as possible consistent with the efficient and effective administration of the food stamp program. The provisions of the Food Stamp Act of 1964, as amended, which are relevant to current regulations of the Secretary governing the food stamp program, shall remain in effect until such regulations are revoked, superseded, amended, or modified by regulations issued pursuant to the Food Stamp Act of 1977. Coupons issued pursuant to the Food Stamp Act of 1964, as amended, and in general use as of the effective date of the Food Stamp Act of 1977, shall continue to be usable to purchase food, and all other liabilities of the Secretary, States, and applicant or participating households, under the Food Stamp Act of 1964, as amended, shall continue in force until finally resolved or terminated by administrative or judicial action, or otherwise.

(b) Pending proceedings under the Food Stamp Act of 1964, as amended, shall not be abated by reason of any provision of the Food Stamp Act of 1977, but shall be disposed of pursuant to the applicable provisions of the Food Stamp Act of 1964, as amended, in effect prior to the effective date of the Food Stamp Act of 1977."

From the second quoted sentence, it would follow that the old penalty section which did not provide for a monetary fine as an alternative to disqualification was to remain in effect until the Secretary promulgated regulations to implement the new penalty provisions. The latter event did not occur until January 1, 1979, after the violation involved herein had taken place. The Secretary's decision, in the interest of orderly and efficient administration of the food stamp program, to apply the regulation to violations occurring subsequent to January 1, 1979 was not inconsistent with section 1303, and we conclude, therefore,

> authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

that the civil penalty provision is not applicable to plaintiff.

*Affirmed.*