PTF ENTERPRISES, INC., d/b/a Mike's Market, Petitioner,

v.

UNITED STATES of America, Defendant.

No. 83–0195–CV–W–3.

United States District Court, W.D. Missouri, W.D.

March 15, 1983.

J.C. Hambrick, Jr., Kansas City, Mo., for petitioner.

Linda Sybrant, Asst. U.S. Atty., Kansas City, Mo., for defendant.

OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

On February 3, 1983, the United States Department of Agriculture, Food Nutrition Service (FNS) issued a final administrative determination disqualifying petitioner from participating in the food stamp program for three years pursuant to 7 U.S.C. § 2021; 7 C.F.R. § 278.6(a). Petitioner filed for review of the decision and trial de novo on the issues underlying the Department of Agriculture's (Department) final determination on February 18, 1983, under 7 U.S.C. § 2023. On the same date petitioner filed a request for an immediate stay of the three year disqualification scheduled to take effect on March 6, 1983. Abiding by the notice requirements of the regulations a hearing was set for and held on March 4, 1983. After hearing the testimony and reviewing the documents presented at the hearing the court denied petitioner's request for a stay and scheduled the requested trial de novo for March 10, 1983. Careful review of the evidence presented at the trial leads the court to uphold the final determination of the Department.

In reaching its decision, the court had before it the evidence presented at the March 10, 1983, trial, including evidence initially received at the hearing on petitioner's request for an immediate stay. The evidence indicates that petitioner, PTF Enterprises, Inc., was formed in May of 1980 by Pat Urnise, Ted Braile, and Frank Biondo, as equal one-third shareholders. The corporation, through its three shareholders ran Mike's Market (Mike's) located at 3801 E. 31st Street, Kansas City, Missouri. Although holding different offices in the cor-

poration, all three owners managed the store. The store hours were divided into three shifts with each shareholder running the store for a shift each day. Mr. Biondi did the bookkeeping and most of the purchasing. Mr. Urnise also did some purchasing. The Market's main competitor is a Safeway store located a few blocks away.

Based on information coming to its attention the Department commenced an investigation of Pat Urnise in March of 1980. Mellbreth Bowling, a special agent for the Department, along with an investigative aid, first approached Pat Urnise on April 30, 1980 and offered to sell him food stamps at a discount. In a span of from four to six months Pat Urnise illegally purchased $3640 worth of food stamps for $1936 in at least six separate transactions. Each transaction occurred in the backroom of Mike's when Pat Urnise was managing the store and each transaction was conducted by an agent of the Department. Neither Ted Braile nor Frank Biondi were in the store at the time of the illegal sales.

Of the total sold to Pat Urnise, $1936 worth of the food stamps were traced by the Federal Reserve. Mike's redeemed $545 worth of the food stamps. Pat Urnise exchanged the $545 in food stamps for an equivalent amount in cash taken from the cash register at Mike's. He was indicted on six counts of purchasing food stamps for cash at a discount in March of 1982. He pled guilty to two of the counts.

This was not the first time Pat Urnise had run afoul of the food stamp program. In 1977 the Department investigated Mike's and found serious program violations had been committed by Pat Urnise, Ted Braile, and Frank Biondo. The store was disqualified for a period of six months in February of 1979.

When Pat Urnise was indicted in 1982 the other two shareholders sought to have him removed as an owner of Mike's. They did not actually buy him out until September of 1982. Both Ted Braile and Frank Biondo testified that they were unaware that their co-owner was purchasing food stamps illegally until his indictment.

Harvey King, in charge of administering the food stamp program in western Missouri, wrote the case summary and made the recommendation submitted to the Department's Denver office. His report and recommendation were based on the investigation report of the Inspector General's Office. He recommended that Mike's be disqualified for three years because of the extensive nature of the violation. He testified that he followed the guidelines of the Department in reaching his recommendation. In the past two years Mr. King had been involved in five or six cases similar to the petitioner's case. Three of the cases had involved trafficking in food stamps in amounts exceeding $1000, a flagrant violation under the guidelines. In each of the three cases he had recommended a three year disqualification from participation in the food stamp program. He also testified that it was the policy of the Department to hold a business accountable for the food stamp violations of one of its owners. His experience with cases involving food stamp violations dates back to 1972, and includes hundreds of cases. The Denver office and the Review Officer in Washington, D.C. both upheld Mr. King's recommendation.

The court is not called upon to determine whether a violation of the Food Stamp Act has occurred; Pat Urnise did violate the Act. Petitioner does not refute this fact. The issue, simply put, is whether petitioner, a corporation, should be penalized for the food stamp violations of Pat Urnise, its owner, officer, and employee. When the occurrence of a violation is not controverted then the court's concern focuses on whether the penalty imposed is arbitrary or capricious. See *Maxia v. United States,* 687 F.2d 276, 277 (8th Cir.1982); *Studt v. United States,* 607 F.2d 1216, 1218 (8th Cir.1979).

The Secretary of the Department is authorized under 7 U.S.C. § 2021 to disqualify retail food stores that violate the Food Stamp Act or regulations promulgated thereunder. If a business firm is found to have violated the program in a flagrant manner than it may be disqualified for up to three years from participating in the

program. 7 C.F.R. § 278.6(a). Under guidelines promulgated by the Department, "FNS Instruction 744–9" page 7, paragraph IV,A,1, a flagrant violation consists of purchasing over $1000 worth of food stamps at a discount during the course of an investigation. The same guidelines also set out on page 5, paragraph III,B,1, that the illegal conduct should be considered consistent with store policy when a minimum of four violations have occurred that involve either the owner of the store or members of management.

On their face, the Act, regulations and guidelines lead to the conclusion that the Secretary did not act arbitrarily or capriciously in penalizing petitioner. Pat Urnise was an owner of and working for the petitioner at the time he made the illegal purchases, and the purchases, at least six in number, totaled over $3000 worth of food stamps.

The circuits, that have ruled, however, are split on whether the illegal actions of employees are attributable to their employers in food stamp disqualification cases. The Tenth Circuit has refused to extend culpability to an employer that neither knew of nor benefitted from its employee's wrongful conduct. *Badwan v. United States,* 541 F.2d 1388 (10th Cir.1976). The First and Second Circuits, on the other hand, have ruled that the owner does not have to be involved in the wrongdoing to be culpable. *See Kulkin v. Bergland,* 626 F.2d 181 (1st Cir.1980); *Willy's Grocery v. United States,* 656 F.2d 24 (2nd Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1011, 71 L.Ed.2d 301 (1982); *JCB Super Markets, Inc. v. United States,* 530 F.2d 1119 (2nd Cir.1976). *See also Save More of Gary, Inc. v. United States,* 442 F.2d 36 (7th Cir.), *cert. denied,* 404 U.S. 987, 92 S.Ct. 535, 30 L.Ed.2d 549 (1971). The Eighth Circuit has not expressed an opinion on this issue.

In the Tenth Circuit case, the employee, a cousin of the owner, in charge of the store at the time of his wrongful acts, purchased food stamps at a discount from an agent of the Department. Although recognizing the need to punish fraud in and non-compliance with the food stamp program, the panel concluded that the actions of the employee could not convey responsibility to the owner. *Badwan v. United States,* 541 F.2d at 1390, 1391. The court reasoned that the employee acted solely for his own benefit, to the detriment of his employer, and without his employer's knowledge. *Id.* at 1391. For these reasons the court did not believe that principles of agency served to create any culpability on the part of the employer.

In *Kulkin* and *JCB* the violation consisted of employees selling, on the business premises, ineligible items for food stamps. Both courts found the employer's lack of knowledge of the violations by its employees was not a defense to the Department's action against it. *Kulkin v. Bergland,* 626 F.2d at 183; *JCB Super Markets, Inc. v. United States,* 530 F.2d at 1122.

Petitioner contends that the facts of *Kulkin* and *JCB* distinguish those cases from its own, and that *Badwan* is determinative. Relying on the *Badwan* analysis, petitioner reasons that an employer is only culpable for its employee's misconduct when it benefits from that misconduct. *See also Wolf v. United States,* 662 F.2d 676, 678 (10th Cir. 1981). According to petitioner, an employee who sells the employer's ineligible goods for food stamps benefits the employer. On the other hand, the employee who buys food stamps at a discount, but does not pass them along at a discount to the employer does not benefit the latter.

The Second Circuit rejected the same argument in *JCB.* It reasoned that to make benefit or advantage to the employer a prerequisite to holding it liable for the misconduct of its employees would have the effect of insulating an employer from such liability since wrongful acts of employees seldom inure to the benefit of the employer. *JCB Super Markets, Inc. v. United States,* 530 F.2d at 1122. Since *JCB* the Second Circuit has had the opportunity to rule on a discount purchase case and has reached the same conclusion. In *Willy's Grocery,* the husband of the owner of the store purchased food stamps at a discount from agents of the Department and later pled

guilty to the charges arising from those sales. The court ruled, that based on the husband's conviction, the FNS was authorized to disqualify the store from participating in the food stamp program under the guidelines set out by the Department. *Willy's Grocery v. United States,* 656 F.2d at 27.

■■■ The court finds the better approach to the issue of employer liability and the one more consistent with the Act and regulations to be the approach taken by the First and Second Circuits. The court can not agree with *Badwan* or the petitioner that the liability of a corporation should hinge on whether it knew about or benefitted from the acts of its officers, agents, or employees. To take such a position would render enforcement of the Act against a food business involved in the program practically impossible. *See JCB Super Markets v. United States,* 530 F.2d at 1122. A corporation does not act independently of its officers, agents, and employees. To the contrary, a corporation can act only through its officers, agents, and employees. It must accept some responsibility for their actions, especially in this area of the law. *Id.* at 1122. When the food stamp program was established to benefit the impoverished of this nation, it also bestowed a financial benefit on the food stores that participate in the program. The ability to accept food stamps as cash, and then later, to redeem them for cash enables a participating store to make sales that it would otherwise have been unable to make. As petitioner pointed out, food stamp related sales can be a significant portion of a store's income. Along with this lucrative opportunity, however, comes the responsibility of abiding within the provisions of the program. If a store fails to comply with the provisions then it forfeits its eligibility to participate in the program for a designated period of time. Holding a participating store responsible for the conduct of its employees helps to ensure increased compliance with the program and fulfillment of the goals of the Act.

The question of corporate liability in this setting, however, does not turn on the scope of such common law principles as agency or respondeat superior, but rather on interpretation of the Food Stamp Act and its regulations. Congress chose to take a dual approach to enforcement of the food stamp program. It established sanctions for business as well as for individual violators, undoubtedly to strengthen the enforcement mechanism and to increase the deterrent value of the penalties. The regulations establish that an authorized food store may be disqualified from participating in the program when the store fails to comply with the Act or regulations because of the wrongful conduct of an owner, manager, or someone acting on their behalf. 7 C.F.R. § 278.6(a).

The case at bar falls squarely within the enforcement provisions of the Act. Pat Urnise was an owner of the petitioner at the time he illegally purchased the food stamps at a discount. Moreover, the illegal purchases occurred on the premises of the store while Mr. Urnise was managing it. To allow petitioner to escape unscathed by the actions of one of its owners would render meaningless the enforcement provisions contained in 7 U.S.C. § 2021 and 7 C.F.R. § 278.6(a). Such a conclusion would have the effect of attaching liability to a participating food business only when it was the conscious policy of the business to violate the program or when the business chose to look the other way when its employees were violating the Act. Neither is consistent with the language of the Act or its regulations.

■■■ The court, furthermore, finds that imposition of the three year disqualification is neither arbitrary nor capricious. The sanction is consistent with the guidelines established by the Secretary and with sanctions imposed in similar cases involving flagrant violations.

The court denies petitioner's request to relieve it of the sanction imposed by the Department of Agriculture, Food Nutrition Service. Participation in the food stamp program requires petitioner to accept re-

sponsibility for the actions of its owners, and that it must do.

IT IS SO ORDERED.