MARIGOLD INVESTMENT, INC., d/b/a Corning Food Center, Jean Ann Rorex, B.J., Inc., d/b/a Rorex Corning Big Star and Rorex Rector Big Star and Jerry Rorex, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. J–C–80–118.

United States District Court, E.D. Arkansas, Jonesboro Division.

March 30, 1984.

John R. Henry, Harrisburg, Ark., for plaintiffs.

George W. Proctor, U.S. Atty. by Walter G. Riddick, Asst. U.S. Atty., Little Rock, Ark., for defendant.

## MEMORANDUM OPINION
## AND ORDER

GEORGE HOWARD, Jr., District Judge.

Plaintiffs[1] instituted this action on May 29, 1980, pursuant to Title 7 U.S.C. § 2023, for review of the administrative proceedings of Food Stamp Review Officer of the United States Department of Agriculture, Food and Nutrition Service (FNS), affirming the Department's action in:

1. Withdrawal of authorization of Marigold Investment, Inc., d/b/a Corning Food Center, Corning, Arkansas, Mrs. Jean Ann Rorex, owner, to participate in the food stamp program.

2. Denial of authorization of Rorex Corning Big Star, Corning, Arkansas, Mr. Jerry Rorex, owner, to participate in the food stamp program.

3. Denial of authorization of B.J., Inc., d/b/a Rorex Big Star, Corning, Arkansas, Mr. Jerry Rorex, president, to participate in the food stamp program.

### RELEVANT FACTS

The Corning Food Center was formerly authorized to participate in the food stamp program under the ownership and management of Jerry Rorex. This authorization was temporarily withdrawn in 1973 because of violations of program regulations. In 1974, Jerry Rorex was convicted of willful failure to pay F.I.C.A. and Withholding Taxes withheld for employees. In September, 1977, he was convicted of dealing with a stolen motor vehicle in interstate com-

---

1. Mrs. Jean Ann Rorex is the owner and operator of Corning Food Center. Her husband, Jerry Rorex, is the owner of Rorex Corning Big Star and Rorex Rector Big Star. These establishments are retail food outlets.

merce. Both offenses are felonies. On a determination that Mr. Rorex's business integrity and reputation were not consistent with the aims of the food stamp program, authorization of Corning Food Center was withdrawn in November, 1977. An application for reinstatement was denied. Ownership of the store was transferred to Mrs. Jean Ann Rorex, wife of Jerry Rorex, and a new application was made by her in 1978. This application was granted with the express condition that Jerry Rorex not participate in the operation of Corning Food Center in any capacity.

During the fall of 1979, Rorex Big Star at Rector, Arkansas, was owned and operated by Jerry Rorex, but was not authorized to participate in the food stamp program. In October and November, 1979, undercover investigators of the Department of Agriculture, on several occasions, made purchases by using food stamps to buy a substantial amount of merchandise, much of it not eligible to be bought by the use of food stamps, at Rorex Big Star. The investigators also purchased, with food stamps, ineligible items at Corning Food Center at about the same time. Some of the food stamps used in the purchase from Rorex Big Star at Rector were unlawfully redeemed through Corning Food Center.

After the occurrence of these events, the authorization of Corning Food Center was withdrawn and pending applications for authorization for Rorex Big Star at Rector and Rorex Corning Big Star were denied. The food stamp review officer on April 30, 1980, affirmed the action of the Department in withdrawing authorization of the Corning Food Center and the denial of the applications of Rorex Big Star at Rector and B.J., Inc., d/b/a Rorex Corning Big Star.

## TRIAL DE NOVO AND BURDEN OF PROOF

Pursuant to 7 U.S.C. § 2023 [2] the Court afforded the plaintiffs a trial *de novo*. The Court hastens to add that this proceeding as a trial *de novo* was not conducted within the traditional meaning of trial *de novo* in that the Department was not required to go forward with the evidence and to establish the purported violations of the Food Stamp Act by a preponderance of the evidence. To the contrary, plaintiffs had the burden to prove the invalidity of the Department's determination of disqualification by a preponderance of the evidence. In other words, the administrative record created by the reviewing officer of the food stamp program was afforded the presump-

2. Section 2023 provides in pertinent part:

Whenever an application of a retail food store ... is denied ... such store ... within ten days of the date of delivery of ... notice, [may] file a written request for an opportunity to submit information in support of its position to such person or persons as the regulations may designate. If such a request is not made or if such store, concern, or State agency fails to submit information in support of its position after filing a request, the administrative determination shall be final. If such request is made by such store ... such information as may be submitted by the store ... as well as such other information as may be available, shall be reviewed by the person or persons designated by the Secretary, who shall, subject to the right of judicial review hereinafter provided, make a determination which shall be final and which shall take effect thirty days after the date of the delivery or service of such final notice of determination. If the store, ... feels aggrieved by such final determination, it may obtain judicial review thereof by filing a complaint against the

United States in the United States court for the district in which it resides ... within thirty days after the date of delivery or service of the final notice of determination upon it, requesting the court to set aside such determination.... The suit in the United States district court ... shall be tried *de novo* by the court in which the court shall determine the validity of the questioned administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence. During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless an application to the court on not less than ten days' notice, and after hearing thereon and a showing of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal.

The Department's decision has been stayed in this proceeding since the filing of this action by plaintiffs.

tion of accuracy subject to being rebutted by plaintiffs. Stated differently, the plaintiffs have the burden of establishing facts that they are entitled to relief from the disqualifications imposed by the Department. Otherwise, the Department's determination prevails. *See, Redmond v. United States,* 507 F.2d 1007 (5th Cir.1975).

The crucial issue is whether plaintiffs have shown, by a preponderance of evidence, the invalidity of the administrative action.[3]

Joseph J. Turecky, Chief Compliance officer for the Southwest Region Foods and Nutrition Service (FNS), testified that the Department found Rorex in violation of the food stamp program in 1970 and the Department imposed a disqualification period of thirty days. Between 1970 and 1972, when Rorex pled guilty to a federal offense and was sentenced to prison, there was no evidence of any other violation of the program. However, as a consequence of Rorex's felony conviction the Department found that Rorex's "business reputation and integrity were not such as to advance the interest of the program."[4] On September 28, 1978, Rorex's authorization was withdrawn. In arriving at this determination, the Department also took into consideration the initial disqualification of thirty days and evidence of several outstanding and unsatisfied judgments against Rorex.[5]

---

**3.** Plaintiffs argue that the authorization afforded Mrs. Rorex in 1978 coupled with the condition that her husband not participate in the operation of Corning Food Center in any capacity amounts to permanent exclusion of Mr. Rorex from the food stamp program and, accordingly, deprives Mr. Rorex of due process of law. Mr. Rorex challenged the condition by filing an action in this Court in January, 1979, but voluntarily dismissed his action before the issues were joined.

Plaintiffs have not asserted the purported "permanent exclusion" as an issue in their complaint here; nor did the administrative hearing officer consider the matter. The only relief prayed for in plaintiffs' complaint is a finding that the Department's action in withdrawing authorization from Corning Food Center and the denial of the applications of Corning Big Star and Rector Big Star are invalid.

**4.** The Department may deny an application for participation in the food stamp program or withdraw authorization if the Department determines that an applicant's or participant's business integrity and reputation will not further the purposes of the program. In making this determination, the Food and Nutrition Service officials shall consider, *inter alia:*

(i) Criminal conviction records reflecting on the honesty or integrity of officers or managers of the applicant firm;

(iii) Judicial determinations in civil litigation adversely reflecting on the integrity of officers or managers of the applicant firm;

(vi) Any other evidence reflecting on the business integrity and reputation of the applicant.

*See, Food Stamp Program Regulations Promulgated by the Department,* 7 C.F.R. §§ 278.1 through 278.8.

**5.** FNS officials took into consideration the following actions pending in the Circuit Courts of Lawrence and Craighead Counties, Arkansas:

| | | | |
|---|---|---|---|
| 1. | April 8, 1970 | – Certificate of Indebtedness, Sales Tax, delinquent sales tax during audit period January 1 through September 30, 1969, Craighead County | $ 3,500.00 |
| 2. | May 10, 1971 | – Default Judgment, BREVONI HOSIERY–SOUTH, INC., Craighead County | $ 2,487.42 |
| 3. | December, 1971 | – Certificate of Indebtedness, Sales, Bad Check, Craighead County | $ 6,990.92 |
| 4. | April 13, 1972 | – Certificate of Indebtedness, Sales Tax, delinquent sales tax during audit period January 1 through January 31, 1972, Craighead County | $ 2,063.08 |
| 5. | January 25, 1973 | – Judgment, DOYLE SCARBOROUGH, SCARBOROUGH ELECTRIC SERVICE, Craighead County | $ 8,000.00 |
| 6. | March 12, 1973 | – Certificate of Indebtedness, Sales Tax, delinquent sales tax during audit period January 1 through August 31, 1972, Craighead County | $17,805.07 |

On January 2, 1979, Mrs. Rorex, after acquiring all of the stock of Marigold Investment, Inc., d/b/a Corning Food Center, was authorized to participate in the program with the stipulation "Mr. Rorex is not and will not be involved in the ownership or operation of the firm in any·manner whatsoever."

On December 27, 1979, the conditional authorization granted Mrs. Rorex was revoked because investigators had found that Rorex was participating in the operation of Corning Food Center in violation of the stipulation; that employees were receiving food stamps in exchange for ineligible food articles; and that Corning Food Center was the source for the redemption of food stamps received at Mr. Rorex's stores that were not authorized to participate in the program.

Plaintiffs readily admit that Rorex worked in the Corning Food Center in violation of the conditional grant of authorization extended to Mrs. Rorex, but argue that his presence and personal input were necessary to keep the business operative and avoid closing the business.

Further, plaintiffs do not seriously challenge the testimony that employees at Corning Food Center sold ineligible food items for food stamps. Plaintiffs argue that they instructed their checkers not to receive food stamps for ineligible food articles and that, accordingly, the employees should be held responsible for these violations and that plaintiffs, and more particularly Mrs. Rorex, should not be penalized since there is no personal knowledge or involvement of the purported violations.

After carefully considering the record, the Act and the Department's implementing Regulations, the Court is not persuaded that the Department's factual determinations pertaining to the violations are either invalid, arbitrary or capricious in any manner. An employer's personal non-involvement in the sale of ineligible. food items for food stamps is not a shield or defense to the Department's proceedings which may culminate in either a disqualification for a specific period of time in the program or a civil money penalty. Where, as here, checkers are acting within the scope of their employment in accepting food stamps for ineligible items, Mrs. Rorex, as owner of Corning Food Center and the person granted permission to participate in the program, is liable for the acts of her checkers. See, J.C.B. Super Markets, Inc. v. United States, 530 F.2d 1119 (2nd Cir.1976); Wolf v. United States, 662 F.2d 676 (10th Cir.1981); Kulkin v. Bergland, 626 F.2d 181 (1st .Cir.1980).

A matter that does give the Court some concern is the Department's consideration of the breach of the condition that precluded Rorex from having any role at Corning Food Center in its decision to withdraw authorization extended to Mrs. Rorex to participate in the program.

Rorex's disqualification in January, 1979, was not based upon any violation of the program itself. His conviction of a felony and the Department's determination that Rorex's reputation and integrity were not conducive to a viable food stamp program in the Corning community are the asserted reasons. The disqualification was not for a specific period of time.

| 7. | April 5, 1973 | – Judgment for PEPSI COLA BOTTLING COMPANY, INC., Lawrence County | $15,695.24 |
| 8. | April 5, 1973 | – Judgment for EVANSVILLE FOOD DISTRIBUTORS, INC., Lawrence County | $12,454.12 |
| 9. | May 14, 1973 | – Judgment for KNEA RADIO, JONESBORO, INC., Craighead County | $ 495.00 |
| 10. | May 15, 1973 | – Judgment for BROADWAY PACKING COMPANY, INC., Craighead County | $ 5,920.91 |
| 11. | September 20, 1973 | – Certificate of Assessment, contributions levied by Arkansas Employment Security Act, Lawrence County | $ 1,217.31 |

Mrs. Rorex, in an effort to salvage the business during Rorex's incarceration, became owner of Corning Food Center and, after a delay of four months, was successful in acquiring authorization, but only after the stipulation excluding Rorex was imposed and agreed to. Rorex argues that he was not personally involved either in the imposition or acceptance of the conditional authorization resulting in his exclusion in the operations of this business. Thus, argues Rorex, he has been denied procedural due process.

■ While the Court hastens to recognize that the Department's action in granting the conditional authorization to Mrs. Rorex involved a question of adjudicative fact on which a trial is not appropriate and that, perhaps, due process requires notice and opportunity for an informal response, the Court is not impressed with Rorex's argument for two reasons. First, Rorex voluntarily submitted to FNS officials the following affidavit in support of his wife's application for a food stamp authorization for Corning Food Center:

"This is to certify and verify that I do not have any interest whatsoever (ownership or managerial) nor do I anticipate any, in the operation of the store at Corning, Arkansas, known as 'Corning Food Center.'

The ownership of this store rests with Jean Ann Rorex, of Corning, Arkansas."

It is plain that one may waive a constitutional right when done knowingly, intentionally and voluntarily.

Secondly, Rorex instituted a lawsuit in this Court on February 2, 1979, challenging specifically the condition which excluded him from any participation in the operation of Corning Food Center, but voluntarily dismissed his action on October 23, 1979. The Department's contention that this issue is *res judicata* appears to have merit.

But more importantly, that issue is not currently before the Court.

■ The Court is persuaded, however, that the Department's sanction or, more appropriately, the lack of any definitive sanction imposed in Mrs. Rorex's case was arbitrary and capricious.

Section 2021 of the Act provides:

Any approved retail food store ... may be disqualified for a specific period of time from further participation in the food stamp program, or subjected to a civil money penalty up to $5,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this Act or the regulations issued pursuant to this Act. Such disqualification shall be for such period of time as may be determined in accordance with regulations issued pursuant to this Act. The action of disqualification or the imposition of a civil money penalty shall be subject to review as provided in Section 14 of this Act....[6]

The applicable regulation provides:

FNS may disqualify any authorized retail food store or authorized wholesale food concern from further participation in the program if the firm fails to comply with the Food Stamp Act or this part. Disqualification shall be for 6 months to 5 years for the firm's first sanction; from 12 months to 10 years for a firm's second sanction; and disqualification shall be permanent for a firm's third sanction or a disqualification based on trafficking in coupons or ATP cards.

It is clear from the record that Mrs. Rorex was disqualified for an "indefinite" period, which may or may not result in a

---

**6.** Section 2021 was amended in 1982 and provides now:

(b) Disqualification ... shall be:
(1) for a reasonable period of time, of no less than six months nor more than five years, upon the first occasion of disqualification;

(2) for a reasonable period of time, of no less than twelve months nor more than ten years, upon the second occasion of disqualification; and,
(3) permanent upon the third occasion of disqualification based upon the purchase of coupons or trafficking in coupons....

permanent disqualification, depending upon the personal behavior of Rorex to be judged by standards not warranted under the Act and appear to be partially, if not totally subjective. For example, Mr. Turecky testified:

Q. And in this case it might be thirty days, it might be three years, and it might be forever?

A. No, it could be forever. It could be forever in Mr. Rorex's case if he was to be, say, we make an agreement here that he is off the program for three years because of the amount of violations involved in all these other investigations which in themselves warrant—

.    .    .    .    .

A. (Continuing) If we were to agree here that our position is supported and Mr. Rorex gets off the program, say, for three years, because of his business integrity, at that time he should be expected to be able to be put back in the program.

Q. Where does it say that?

A. I said if we were to agree here. Now normally, and this is going to make my point, if during that three-year period he does nothing but enhance the bad reputation that he has had, then he should not be entitled to come back on the program at the end of those three years, because if he were—As I told Mr. Riddick before we ever came to trial, if we were dealing with nothing but the withdrawal of Mr. Rorex for the business reputation and integrity for which we withdrew him two years ago, If he had kept his nose clean these two years, we wouldn't have much of a case right now. But everything that's gone on in between enforces our feeling that his reputation is still of such character that he doesn't deserve to be—have any part of the food stamp program.

Q. In other words, the fact that he didn't accept the way you all wanted to do it in 1977 and just say, okay, you got me, whatever you want to do, the fact that he fought you all has decided—

What caused you to decide that he's undesirable?

A. What he's fighting is our determination back then. And now he's having his day in Court. He's contesting what we did back then but did nothing to enhance his reputation in between.

Q. But you would admit, would you not, that if you were wrong about the standards and the vagueness or whatever of his business reputation and integrity, that he has had a legitimate gripe through the years?

A. No, I wouldn't agree to that at all.

Q. Let me see if I can understand this. What you're telling the Court is that if the Court sustains your position today, that Mr. Rorex is going to be, dating from today, disqualified for an additional three-year period?

A. Additional? What do you mean "additional three years?"

Q. For a three-year period.

A. Okay.

Q. Now comes October the 27th, 1985, three years later. Mr. Rorex can then apply and you or someone sitting there in Mr. Bull's position or your position will again look at the business integrity, reputation of the program, and enhancement of the program and so forth and determine whether he gets his permit back?

A. Not actually look. That if during this period additional information became evident such as further conviction, published in the newspapers, which is how it came to the attention of Mr. Bull in the first place, if something happened in the interim that would give us cause for concern as to whether or not he should be authorized.

Q. Now you're not surely telling me that—I thought you were telling me he'd be treated as a new applicant?

A. That's right.

Q. Three years from now?

A. But if the withdrawal for the three-year period was sustained on his business reputation and if his business reputation remained on increased in sev-

erity during that three-year period, then he has done nothing to justify reauthorization.

The Department, in extending authorization to Mrs. Rorex to participate in the program, ultimately concluded that she was the owner of Corning Food Center and that her ownership was not to circumvent the disqualification imposed on Rorex in 1978. Given this finding, the Court is not persuaded that Mrs. Rorex's participation in the program should be determined upon the personal behavior of Rorex so long as he is not a participant in the operations of the Corning Food Center in any way.

A trial court is empowered to review not only the findings of the Department relating to alleged violations of the Act, but is authorized to review sanctions imposed. *Goodman v. United States*, 518 F.2d 505 (5th Cir.1975). Section 2023 of the Act provides, in part:

> [I]f the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence.

In *Studt v. United States*, 607 F.2d 1216 (8th Cir.1979), the Court of Appeals observed:

> "Only where the Department of Agriculture has acted in an arbitrary and capricious manner in imposing a sanction may the district court alter the sanction."

The Court is of the view, in light of its finding that the Department's indefinite suspension of authorization against Mrs. Rorex is not warranted by law, the Court must impose a sanction in accordance with the law; that an appropriate sanction for the sale of ineligible food items for food stamps is a fine rather than disqualification because, as here, of the economic impact on both the retailer and food stamp recipients in an economic depressed community. But, here, the Department also found that the

Corning Food Center was a source of redemption for food stamps received at stores owned and operated by Rorex which had not qualified to participate in the program; and that Mrs. Rorex had permitted Rorex to participate in the operations of the store in violation of the condition stipulated to. Given this additional fact, the Court finds that a disqualification period of six (6) months should be imposed on Mrs. Rorex as owner and operator of Corning Food Center which disqualification is to go into effect April 30, 1984. It is clear from the record that this proceeding is the first action instituted against Mrs. Rorex for any purported violations of the program. Moreover, the record does not reflect that the Department cautioned Mrs. Rorex before initiating withdrawal proceedings as suggested under the regulations.[7]

Relative to the Department's denial of Rorex Corning Big Star, Corning, Arkansas, Jerry Rorex, owner, and B.J., Inc., d/b/a Rorex Big Star, Corning, Arkansas, Jerry Rorex, President, to participate in the food stamp program, the Court affirms the decision of the Department.

In summary, the Court reversed and vacates the "indefinite" withdrawal of authorization in the case of Mrs. Rorex and the Court imposes a six (6) month disqualification period effective April 30, 1984. The Court affirms the Department's denial of the applications of Rorex.

---

7. Section 278.6(d) provides in part:
   The FNS regional office making a disqualification or penalty determination shall consider: (1) The nature and scope of the violations committed by personnel of the firm, (2) *any prior action taken by FNS to warn the firm about the possibility that violations are occurring,* ... (Emphasis added)