Francisco COLLAZO, d/b/a Cash & Carry, Inc., Plaintiff, Appellant,

v.

UNITED STATES of America, et al., Appellees.

No. 81–1186.

United States Court of Appeals, First Circuit.

Argued Sept. 16, 1981.

Decided Dec. 21, 1981.

Blas C. Herrero, Jr., Hato Rey, P. R., for plaintiff, appellant.

Vivian Reyes Lopez, Asst. U. S. Atty., with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., was on brief, for appellees.

Before CAMPBELL and BREYER, Circuit Judges, and VAN DUSEN,* Senior Circuit Judge.

VAN DUSEN, Senior Circuit Judge.

This is an appeal from a judgment of the district court affirming a six-month disqualification of the appellant from participation in the Department of Agriculture's food stamp program. We affirm the judgment of the district court.

The appellant, Francisco Collazo, operates a retail and wholesale grocery store known as "Collazo Cash and Carry, Inc.," in Canovanas, Puerto Rico. Collazo's grocery was authorized by the United States Department of Agriculture (the Department) in July 1975 to redeem food stamps under the Food Stamp Program, 7 U.S.C. §§ 2011–2027 (Supp. IV 1980). In November 1978, the Food and Nutrition Service of the Department of Agriculture (FNS) became suspicious of Collazo's high rate of food stamp redemption relative to total sales, as this indicated possible violations of the food stamp program. In the course of subsequent monitoring, employees of the FNS used food stamps to purchase ineligible items from Collazo's store on five separate occasions in December 1979 and January 1980.

Collazo was advised of these violations by a letter dated February 25, 1980. In his response of March 7, 1980, Collazo did not deny the violations but instead promised that no violations would occur in the future. On April 18, 1980, Collazo was disqualified from redeeming food stamps for a period of six months. After administrative review within the Department, Collazo brought this suit in the United States District Court

---

* Of the Third Circuit, sitting by designation.

for the District of Puerto Rico under 7 U.S.C. § 2023 (Supp. IV 1980), seeking judicial review of his disqualification.

Collazo did not deny before the district court that the violations occurred, but instead urged the court to set aside the six-month disqualification. In particular, he sought the alternative sanction of a civil fine, a penalty available under 7 U.S.C. § 2021 (Supp. IV 1980) "if the Secretary [of Agriculture] determines that . . . disqualification would cause hardship to food stamp households."[1] The district court found that the action of the Department in selecting disqualification as the appropriate sanction was not arbitrary and capricious, and the court affirmed the six-month disqualification.

On appeal, Collazo claims that disqualification of his store will cause great hardship to food stamp households, thus qualifying him for a civil money penalty under § 2021. He argues that he was not given an adequate opportunity to present evidence regarding this factual issue to the Department before it chose to impose a six-month disqualification in lieu of the fine. Therefore, his argument concludes, due process requires that he be given a fresh determination of the sanction in the district court, and the court erred in using the arbitrary and capricious standard of review.

## I.

### Opportunity to be Heard at the Administrative Level

■ Both here and before the district court, Collazo contends that he was never given the opportunity to submit information to the Department regarding the possibility of a civil money penalty because he was not aware of this alternative sanction.

This claim raises an important preliminary question of whether the FNS ever notified Collazo that two distinct sanctions were possible and that the choice between these sanctions depended on a factual finding by the Secretary.[2]

The Supreme Court of the United States, in *Morgan v. United States*, 304 U.S. 1, 18–19, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938), stated that "[t]hose who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and be heard upon its proposals before it issues its final command." *Accord, United States v. Florida East Coast R. Co.*, 410 U.S. 224, 242–43, 93 S.Ct. 810, 819–20, 35 L.Ed.2d 223 (1973). Collazo does not deny that he was fully apprised of the charges against his store and that he was given an opportunity to contest these allegations. The record also indicates that, contrary to Collazo's assertion, the Department did give him sufficient notice of "what the Government propose[d]" and adequate opportunity to "be heard upon its proposals before it issue[d] its final command." *Morgan v. United States*, 304 U.S. 1, 18–19, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938).

Collazo was authorized to redeem food stamps as both a wholesaler and a retailer two weeks after the food stamp program began in 1975. He testified at the district court trial that he was visited at least six times by employees of the FNS between 1975 and 1978. The purpose of these educational visits was to discuss the program and to warn Collazo that his store's high redemption rate indicated possible violations of the program's regulations. Collazo testified that "very often" at these visits he was

---

1. Under the implementing regulations, "FNS may impose a civil money penalty in lieu of disqualification only when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp household because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." 7 C.F.R. § 278.6(g) (1981).

2. The food stamp regulations specify the factual determinations that must be made before the FNS regional office can impose one of six periods of disqualification, ranging from 30 days to three years, 7 C.F.R. § 278.6(e) (1981), or a civil money penalty of up to $5,000. per violation, 7 C.F.R. § 278.6(g) & (h) (1981).

given a copy of the regulations. Although he admitted that he had read the regulations in the past, Collazo testified that he never read the criteria for a civil money penalty.

It is true that the last of these educational visits was in November 1978, and the regulations providing for the alternative sanction of a civil money penalty were not effective until January 1979.[3] Therefore, it is unclear from the record whether the regulation discussing the criteria for the civil money penalty, 7 C.F.R. § 278.6(g), was given to him at any of these visits. Furthermore, Collazo testified that the representative from the FNS never spoke to him about the alternate sanctions.

Nevertheless, the record demonstrates that Collazo was given adequate notice of the possible sanctions that may be imposed for violations of the food stamp program. First, we note that at the trial the Assistant United States Attorney stated to the district judge that the new regulations regarding the civil money penalty, 7 C.F.R. § 278.6(g), were mailed to Collazo in 1979. The failure of Collazo or his counsel[4] to challenge this statement or the facts in the following four pargraphs is relevant rebuttal evidence to Collazo's contention that neither he nor his counsel were made aware of the alternative sanctions in the regulations.

Collazo was also given notice of the possible sanctions in the letters sent to him alleging the specific violations of the food stamp program. In a letter of February 25, 1980, the FNS notified Collazo of the alleged violations and informed him of his opportunity to respond. While this FNS letter did not specifically refer to the range of possible sanctions and the factual bases for each, the letter did state:

> "In accordance with the provisions of 278.6(b) of the regulations, you have 10 days from the receipt date of this letter to respond either orally or in writing. You may submit any information, explanation, or evidence pertaining to the cited violations.... *A copy of the regulations is enclosed for your information.*

> "Your reply and the information furnished by you therein will be considered by the Food and Nutrition Service, U. S. Department of Agriculture, before a final determination is made in this matter. In the absence of any answer by the above date, we shall proceed to make a final determination on the basis of information otherwise available to the Food and Nutrition Service."

Letter from Malachy P. Cox to Francisco Collazo (February 25, 1980) (emphasis added).

The regulations discussed in the letter specifically refer to the alternate sanctions that may be imposed for violations of the food stamp program.[5] Therefore, Collazo should have been aware of his opportunity to submit evidence of mitigating circumstances to minimize the period of disqualification or to request a civil fine. In fact, in his response letter of March 7, 1980, Collazo did not deny the violations, but instead

---

**3.** As originally enacted, the penalty section of the Food Stamp Act provided for disqualification as the only sanction, Food Stamp Act of 1964, Pub.L. No. 88–525, § 11, 78 Stat. 707 (1964) (prior to 1977 amendment). In 1977, Congress amended the Act to include the civil money penalty involved here, 7 U.S.C. § 2021 (Supp. IV 1980). The regulation implementing this amendment, 7 C.F.R. § 278.6, was effective January 1, 1979. 43 Fed.Reg. 43277–43279 (Sept. 22, 1978).

**4.** Collazo's counsel certainly should have been aware of the applicable law without any explanation to his client from the FNS.

**5.** Section 278.6(b) states:

"(b) *Charge letter. Any firm considered for disqualification or imposition of a civil*

*money penalty* under paragraph (a) of this section *shall have full opportunity to submit to FNS information, explanation, or evidence concerning any instances of noncompliance before FNS makes a final administrative determination.* The FNS regional office shall send the firm a letter of charges before the determination. The letter shall specify the violations or actions which FNS believes constitute a basis for disqualification or imposition of a civil money penalty. The letter shall inform the firm that it may respond either orally or in writing to the charges contained in the letter within 10 days of receiving the letter."

7 C.F.R. § 278.6(b) (1981) (emphasis added).

presented factors that he hoped would cause the FNS not to impose any sanction at all.[6]

Furthermore, when the regional office of the FNS imposed the six-month disqualification on Collazo's store by letter of April 18, 1980, the letter stated that "[t]his action is taken under the authority of Section 278.-6(a) of the Regulations governing the Food Stamp Program," and the letter also indicated that a copy of the food stamp program regulations was enclosed. Section 278.6(a) provides in part:

> "FNS may disqualify any authorized retail food store or authorized wholesale food concern from further participation in the program for a reasonable period of time, not to exceed 3 years, as FNS may determine, if the firm fails to comply with the Food Stamp Act or this part. . . . FNS may, in lieu of a disqualification, subject the firm to a civil money penalty of up to $5,000 for each violation if FNS determines that a disqualification would cause hardship to participating households."

7 C.F.R. § 278.6(a) (1981). This same letter of April 18 informed Collazo of his right to review within the Department. Letter from Peter Santos to Francisco Collazo (April 18, 1980). Collazo's request for review of April 24, 1980, written by his counsel, once again did not deny the violations but set forth mitigating circumstances, presumably to affect the final determination of the sanction.

Collazo's assertion that he was not granted a sufficient opportunity to present evidence to the administrative agency on the question of the sanction fails in the light of this record. The series of educational visits and warnings regarding his high redemption rate provided Collazo with an opportunity and incentive to familiarize himself with the regulations. Both before the six-month disqualification was imposed and before the administrative review of the sanction, Collazo received letters from the Department which the record indicates did in fact include copies of the regulations specifically referring to the two possible types of sanction.[7] These same letters presented Collazo with the opportunity to submit information to the Department. That this invitation included the opportunity to comment on the possible sanction cannot be denied by Collazo as his letters of March 7 and April 24 dealt solely with mitigating factors.

Therefore, although no formal hearing was held at the administrative level on the question of Collazo's sanction, he was afforded some opportunity to submit evidence to the Department regarding his penalty.[8] Any claim that due process requires a fresh determination of Collazo's sanction at the district court level must be assessed in the light of this record.

---

6. In his letter of March 7, 1980, Collazo stated that "if such violations occurred they were committed against my orders." He requested that the FNS "grant me the opportunity of correcting any fault in the direction of the Corporation I preside, promising formally that if said violations occurred they will never happen again in the future." Letter from Francisco Collazo to Estelle Maldonado (March 7, 1980).

7. The letters of February 25 and April 18 both state that copies of the regulations were attached or enclosed. When these letters were admitted into evidence at the trial, however, the attachments apparently were not included as part of the exhibits. Nevertheless, we accept as true the assertion in the letters that copies of the regulations were attached, as no evidence was introduced to the contrary.

8. Of course, it would be preferable for the Department to include in its letters to alleged violators of the food stamp program a specific statement regarding the alternate sanctions that may be imposed under the statute. This would eliminate all questions of whether alleged violators were given adequate notice and opportunity to be heard on the choice of sanction. Furthermore, the self-interest of the store owners in presenting evidence of hardship to their food stamp customers would also help the Department protect the consumers' interest in continuing operation of nearby stores as food stamp redeemers. See H.R.Rep. No. 95–345, 95th Cong., 1st Sess., 397, reprinted in [1977] U.S.Code Cong. & Ad.News 1941, 2326.

## II.

*Judicial Review of the Sanction under 7 U.S.C. § 2023 (Supp. IV 1980)*

■ The procedures for judicial review of administrative sanctions for violations of the food stamp program are specified in 7 U.S.C. § 2023 (Supp. IV 1980). This section provides that:

"[t]he suit ... shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue. If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence."

*Id.* In *Kulkin v. Bergland*, 626 F.2d 181 (1st Cir. 1980), this court read § 2023 as requiring a de novo trial only on the issue of whether or not the violation occurred, while only a limited review of the sanction was necessary.

*Kulkin* was a suit brought by the president of a supermarket under 7 U.S.C. § 2023 (Supp. I 1977), challenging his store's one-year disqualification from participation in the food stamp program. The district court upheld the Department's finding that a violation of the Food Stamp Act had occurred, but then concluded that it had no authority to review the sanction imposed. On appeal, this court disagreed with the district court's narrow view of its authority and held that the district court could determine whether the penalty imposed by the agency was " ' "unwarranted in law ... or without justification in fact." ' " *Kulkin*, 626 F.2d at 184, *quoting Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973). This court stated:

"While the de novo provision of the Food Stamp Act raises certain problems, it does not, in our view, call for a departure from the usual standard of review concerning sanctions. The Secretary of Agriculture, not the courts, is charged under the statute with effecting an efficient enforcement scheme. 7 U.S.C. § 2021 (Supp. I 1977); 7 U.S.C. § 2013(c) (Supp. I 1977). To be sure, the judicial review section of the Food Stamp Act, 7 U.S.C. § 2023 (Supp. I 1977), authorizes the reviewing court to conduct a 'trial de novo' to 'determine the validity of the questioned administrative action in issue.' We read this language as including some review of the 'validity' of the sanction, but believe the court must still be guided by the concepts implicit in the *Butz v. Glover Livestock Commission Co.* standard."

*Kulkin*, 626 F.2d at 184–85 (footnotes omitted). This court also noted that the standard articulated in *Butz v. Glover Livestock Commission Co., supra*, of "unwarranted in law or without justification in fact" has been equated with the arbitrary, capricious, abuse of discretion standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *Kulkin*, 626 F.2d at 184 n.4, *quoting Cross v. United States*, 512 F.2d 1212, 1218 (4th Cir. 1975).

Collazo does not argue that the use of the *Butz v. Glover Livestock Commission Co.* standard in *Kulkin* violated due process, but instead he seeks to distinguish his case on the facts. He notes that *Kulkin* was "not a case where the factual underpinnings upon which the choice of sanction were significantly controverted." *Kulkin*, 626 F.2d at 186. Therefore, the district court could review the sanction on the basis of Kulkin's affidavit and the administrative record. Furthermore, the violations in *Kulkin* occurred before January 1, 1979, the effective date of the food stamp regulations allowing for the alternative sanction of a civil money penalty.[9] This meant that the Department did not have to consider the factual issue of whether any hardship to food stamp households would require a civil money penalty. *Kulkin*, 626 F.2d at 187. Collazo's argument, then, is that this court did not decide in *Kulkin* the precise issue here—whether the standard of review of the sanction must be stricter under § 2023 if there were issues of fact, such as hardship to food stamp households, that had to be resolved before

---

**9.** *See* note 3 *supra.*

the sanction was selected. We reject this distinction and conclude that due process is satisfied when the district court reviews the Department's sanction under the *Kulkin* standard even when there are underlying questions of fact regarding the sanction.

The Fourth Circuit has noted in a similar case:

"Due process on the issue of sanction requires that the punishment follow rationally from the facts, be authorized by the statute and regulations, and aim toward fulfillment of the Act's purposes."

*Cross v. United States*, 512 F.2d 1212, 1217–18 (4th Cir. 1975) (footnotes omitted). Here, the regional office of the FNS determined, on the basis of the field representative's report, that there would be no hardship to food stamp households that would require a civil money penalty in lieu of disqualification. As shown in part I, *supra*, Collazo was given the opportunity to present evidence on this question to the Department and failed to do so. Nevertheless, when the district court reviewed the Department's finding, it was fully apprised of the conflicting evidence, as Collazo was permitted to present extensive testimony to the court regarding possible hardship to food stamp households. In concluding that the decision to impose a six-month disqualification was not arbitrary and capricious, the district court ensured that "punishment follow[ed] rationally from the facts."

*Cross*, 512 F.2d at 1217. Therefore, we hold that the district court's review of the sanction under the *Kulkin* standard satisfied due process.[10]

### III.

### *Application of the Arbitrary and Capricious Standard*

■ We also reject Collazo's argument that the district court erred in its application of the arbitrary and capricious standard when it affirmed the six-month disqualification. The factors that the FNS is to consider in choosing between a civil money penalty and a disqualification concern the availability of staple foods in other authorized food stores at comparable prices.[11] The record before the district court shows that two stores located near Collazo's store offer for sale substantially the same staple food items at competitive prices. Furthermore, although Collazo contends that many indigent residents of nearby towns depend upon his store for food, each of these towns is serviced by several comparable markets of their own.[12] Collazo's service can be distinguished from the others only in that Collazo provided free home delivery. This distinction is not sufficient under the criteria set forth in the relevant Department regulations.[13] Given this evidence, and in light of " 'the fundamental principle . . . that where Congress has entrusted an administrative agency with the responsibility

---

**10.** Since Collazo was given a full hearing in the district court on the issue of hardship to food stamp households, we need not decide today whether due process requires a full hearing on the factual issues underlying the choice of sanction or whether the district court need only review the record that was before the administrative agency when the final administrative decision was made. *Compare Cross v. United States*, 512 F.2d 1212, 1218 (4th Cir. 1975) ("only in those instances in which it may be fairly said on the *de novo* record as a whole that the Secretary, acting through his designates, has abused his discretion by acting arbitrarily or capriciously, would the district court be warranted in exercising its authority to modify the penalty"); *with* K. Davis, *Administrative Law Treatise* § 29.01–8, at 682 (Supp. 1976) (recommending that "[t]he administrator should be required to state findings and reasons for the penalty, including findings on rele-

vant issues of fact . . . and then the review should be limited to a determination of the question whether the penalty is arbitrary or capricious in the light of the findings and reasons").

**11.** *See* 7 C.F.R. § 278.6(g) (1981), *reprinted* at note 1 *supra*.

**12.** The district court concluded from the record that "there is no hardship by the suspension of the plaintiff's store for a 6 month period to the food stamp customers in the area." We accept this factual finding of the district court because our study of the record indicates that it is not clearly erroneous. *See* Fed.R.Civ.P. 52(a).

**13.** *See* 7 C.F.R. § 278.6(g) (1981), note 1 *supra*. Collazo does not challenge the validity of this regulation.

of selecting the means of achieving the statutory policy "the relation of remedy to policy is peculiarly a matter for administrative competence," ' " *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185, 93 S.Ct. 1455, 1457, 36 L.Ed.2d 142 (1973), *quoting American Power Co. v. SEC*, 329 U.S. 90, 112, 67 S.Ct. 133, 145, 91 L.Ed. 103 (1946), we affirm the district court's holding that the Secretary of Agriculture did not abuse his discretion by disqualifying Collazo's store for six months instead of imposing a civil money penalty.

### IV.

#### *The Use of the High Redemption Rate*

■ Finally, we reject Collazo's contention that the district court improperly relied on the history of Collazo's store as a high food stamp redeemer in approving the six-month disqualification. Collazo cites *Bruno's, Inc. v. United States*, 624 F.2d 592 (5th Cir. 1980), which found a food stamp violator's sanction to be arbitrary and capricious because the FNS had considered the plaintiff's high redemption rate as proof of past violations in selecting a sanction.

Here, in contrast, the high redemption rate merely triggered the investigation of Collazo's store by the FNS. The rejection of a civil money penalty by both the FNS and the district court was properly based on the factual determination that a disqualification would cause no hardship to food stamp households; neither the FNS nor the district court considered the high redemption rate as relevant to the resolution of this factual issue. The court referred to the high rate only in the context of assessing the severity of the six-month disqualification, an issue not before us on appeal. Therefore, we find no error in the district court's consideration of the high redemption rate.

### V.

For the foregoing reasons, the judgment of the district court will be affirmed.