**MILGRAM FOOD STORES, INC., Plaintiff,**

v.

**UNITED STATES of America, United States Department of Agriculture, Food and Nutrition Service, Defendants.**

**No. 81–0288–CV–W–6.**

United States District Court, W.D. Missouri, W.D.

March 4, 1983.

tions in California, the site of the allegedly illegal taxation.

David A. Vorbeck, Margolin & Kirwan, Kansas City, Mo., for plaintiff.

Mark Zimmermann, Asst. U.S. Atty., Kansas City, Mo., for defendants.

MEMORANDUM AND ORDER ENJOINING FOOD STAMP DISQUALIFICATION, REMANDING CASE FOR PENALTY ASSESSMENT, AND CHARGING COSTS OF CERTAIN PROOF TO PLAINTIFF

SACHS, District Judge.

Plaintiff, the owner of several grocery stores, invokes its statutory right to a trial *de novo* of a Department of Agriculture decision to disqualify one store from the food stamp program for a period of sixty days. Although the Court agrees with the Department that violations of the program have been established, it concludes that the Department has acted in an arbitrary and capricious manner in imposing disqualification as a penalty. The Department disregarded a Congressional directive to use monetary penalties rather than program disqualification in most instances, and failed to conduct a meaningful study or analysis of the hardship caused by disqualification of the store, particularly for walkin shoppers in the immediate vicinity of the store. The store is in the heart of an economically depressed residential area in Kansas City, Kansas, with one comparable store located approximately one mile away.

I.

*Procedural History*

This will be the second remand to the Department. In an earlier case, the Court remanded for an explanation of factors considered on the hardship issue. Congress enacted legislation in 1977 authorizing civil penalties of up to $5,000 in lieu of disqualifications (7 U.S.C. § 2021), and the legislative history shows a Congressional preference for monetary penalties in most in-

stances. *See Jedatt v. U.S. Dept. of Agriculture,* 488 F.Supp. 261, 263 at n. 10, 266 (E.D.Mich.1980).

Defendants' response to the remand indicates that no consideration whatsoever had been given to monetary sanctions. After remand, a new determination letter was issued on March 31, 1981, by Kenneth L. Jones, Food Stamp Review Officer, Food and Nutrition Service (FNS), Lakewood, Colorado. Mr. Jones stated, "I have been informed by the Food and Nutrition Service Regional Office that there are other authorized stores in the area which do sell a large variety of staple food items at comparable prices." He also noted that other area stores had previously been disqualified and that persons at the Field Office "have received no complaints of hardship." Four stores were listed as being "in the area", although the radius of the pertinent area was left undefined.

A new appeal to this Court followed. After consideration of materials supplied by the parties, the Court stated that it had "doubt that sufficient investigation and findings took place on the part of the agency to allow informed discretion" but decided not to remand at that time.[1] The Court noted that proceeding to "trial *de novo,*" in accordance with the statutory method of review, (7 U.S.C. § 2023), would avoid reconsideration of the issue of sanctions if plaintiff were found not to be a violator of the program, and would permit a further demonstration of meaningful consideration of the issue of hardship.

## II.

## APPROPRIATE SANCTIONS

### *Standard of Review*

■ Before surveying the evidence presented at the trial *de novo,* the Court

examines the legal principles governing review. Where a district court trial confirms that food stamps have been exchanged for ineligible non-food items, in violation of 7 U.S.C. § 2021, the trial court appraisal of the sanction is governed by the "arbitrary or capricious" test. *Maxia v. United States,* 687 F.2d 276, 277 (8th Cir.1982); *Studt v. United States,* 607 F.2d 1216, 1218 (8th Cir. 1979). The sanction chosen by FNS is deemed to be arbitrary or capricious if it is "unwarranted in law or without justification in fact." *Cross v. United States,* 512 F.2d 1212, 1218–19 (4th Cir.1975). The "arbitrary and capricious" standard, however, does not relieve the agency from meaningful judicial oversight. On the contrary, the Court's review may even result in a judicial determination of the appropriate sanctions, if the result can be fairly forecast from regulatory guidelines properly adopted by the Secretary. *Id.*

How the facts relating to sanctions are to be determined is also in some controversy. It has been argued that, as in many administrative reviews, it is only necessary "to review the record that was before the administrative agency when the final administrative decision was made." *Collazo v. United States,* 668 F.2d 60, 66 n. 10 (1st Cir.1981). An alternative viewpoint urges a "full hearing [in district court] on the factual issues underlying the choice of sanction." [2] *Id.* Generally preferred as a matter of administrative law (but not necessarily following congressional intent in enacting a "trial *de novo*" rule) is the former, review on the record, after requiring the agency " 'to state findings and reasons for the penalty, including findings on relevant issues of fact ...' " Ibid., quoting K. Davis, *Administrative Law Treatise,* § 29.01–8 at 682 (Supp.1976).

---

**1.** The disqualification has not taken effect, but has been stayed pending litigation. Defendants have not contested the stay. Apparently both sides of the litigation are treating it as a test case.

**2.** Senior Judge Meredith allowed a full trial in *Collazo* and this Court considered it expedient

to permit the parties to develop a full record here. Without such a record, there would have been no factual basis for resolving the hardship issue, although FNS twice had an opportunity and obligation to make a hardship determination.

*Evidence At Trial*

■ The only Department witness at trial on the hardship issue was Harvey E. King, Officer-in-Charge, FNS Field Office, Independence, Missouri. Mr. King found no occasion to study or survey the hardship issue until April 30, 1981, after the FNS redetermination and the filing of the second lawsuit. He testified that he "knew the area." [3] He later, in preparation for trial, visited the store for about one hour and saw no walk-in traffic or bus usage. The visit apparently included a quick survey of prices and products on hand, and a drive through the neighborhood, where he observed numerous automobiles. A report of the King inspection trip was prepared, but was not offered in evidence by either side.

Mr. King testified that he has participated in 20 or more hardship determinations, and that normally a distinction is made between rural and urban cases. The Court understands the testimony to mean that in a small town setting, where many miles may separate authorized grocery stores, hardship is not infrequently found; in contrast, hardship is rarely found in an urban area (the witness offered no examples of an urban hardship determination). The hardship determination apparently rests on an unverified assumption that all (or practically all) food stamp recipients have access to motor vehicle transportation, and that only the inconvenience of a long drive justifies a hardship finding.

No facts or argument have been presented to the Court in this case that would justify a hardship finding except as to walk-in grocery shoppers. Only two other

grocery stores referred to in the evidence appear to carry a full line of groceries at comparable prices: the Safeway store about one mile distant and the United Super Market even farther away. Walk-in traffic is feasible, for a maximum of perhaps six blocks from a grocery store.[4] Thus there is no comparable store in the area for the food stamp user dependent on walking to and from the store.[5]

Testimony from knowledgeable witnesses Briscoe, Pierce, Brown and Butler establishes that the store is in the heart of a low income, racial "ghetto." Fourteen percent of the store's sales are in exchange for food stamps. Bus service is poor, with no evening buses, and the cost of available taxi or bus service would necessarily be an additional factor indicating hardship. See *Broad Street Food Market, Inc., supra.* A program offering free rides for the elderly is limited to "every other week" and is overburdened with a waiting list of people seeking transportation.

All witnesses familiar with the area indicated that substantial pedestrian traffic would be anticipated. In addition, a survey conducted over a four-day period in June 1981 indicates that some 8.15% of the grocery shoppers walked to and from the store. Defendants objected to this testimony, because of plaintiff's alleged failure to supply pre-trial discovery. Neither the interrogatories nor the request for production fairly requires disclosure of the survey. However, the Court would be prepared to vacate this ruling and reopen the record, on defendants' motion, so that no unfair surprise can be asserted. The Court would permit fur-

---

**3.** Mr. King is black. The area served is apparently largely a racial "ghetto." Mr. King's sister, not a food stamp recipient, lives about ten blocks west of the store.

**4.** While some persons may "walk a mile for a Camel," there is no evidence that persons carrying grocery bags can be expected to trudge that far. Although there is some slight evidence in this case suggesting a six-block radius for pedestrians, even that distance may be excessive, under a very recent ruling by District Judge Selya in Rhode Island. *Broad Street Food Market, Inc. v. United States,* 555

F.Supp. 1319, 1324–1326, 1327 (D.R.I., Feb. 3, 1983).

**5.** The one-mile radius used in the trade to establish competitive zones obviously contemplates automobile transportation, but does not serve as an admission by plaintiff that walk-in traffic is non-existent. On the contrary, under pressure of this litigation, plaintiff conducted a study of the shoppers at the grocery store in question, and ascertained that about 8% of them walk to and from the store. The evidentiary status of this information is discussed below.

ther cross-examination of witness Larry Townsend, or would receive in evidence any comparable study conducted by defendants. Absent such a request, the Court considers the survey results to have been adequately proven. They are clearly superior to the report from the limited inspection trip by Mr. King, and they are consistent with the testimony of other witnesses, from which it seems evident that a material portion, though a small minority, of the shoppers would be pedestrians. The agency opinion to the contrary (to the extent it exists) was arrived at without any factual basis and has not been supported at trial with any significant factual showing.

### Hardship Determination

The agency articulated no reasons for the choice of sanctions and no findings on relevant issues of fact. Rather, FNS assumed at all times before making its decision that no hardship is created by disqualifying a grocery store if another similar store is about one mile distant. The lack of hardship assumption is necessarily based on a further conclusion that (1) motor vehicle transportation is readily available to all food stamp recipients, or (2) the concept of hardship is to be applied *en masse* rather than individually, so that hardship imposed on 2%, 5% or 10% of the recipients may be disregarded. If the agency relied on the first assumption, no factual basis for the conclusion appears in any material supplied by the agency, and the proof at trial was convincingly to the contrary. If the second assumption has been followed, the Court believes the agency has made an error of law. Individuals suffer hardship, and the Court has no doubt that Congress intended that the agency impose penalties rather than disqualification if significant numbers of individuals would suffer a hardship if their neighborhood grocery store were to be disqualified from the food stamp program.

Defendants insistently urge that hardship must be determined without exhaustive and meticulous research. The Court agrees that some degree of rough practicality may be used in a case like this. It may be inferred,

without additional demonstration, that disqualifying this store as a food stamp processor will present a significant hardship for at least 5% of the shoppers. It seems clear to the Court that this constitutes the kind of hardship contemplated by Congress. The legislative history indicates that fines " 'should normally be imposed instead of disqualification .... This would benefit all three major participants in the program —consumers, businesses and the Department itself. Consumers would not lose the convenience of nearby stores ....' " 2 *U.S. Code Congressional and Administrative News,* 1704, 2326 (1977).

As amended in 1977, the statute authorizes a civil money penalty rather than disqualification of a store "if the Secretary determines that ... disqualification would cause hardship to food stamp households ..." 7 U.S.C. § 2021. There is a Congressional indication that "the severity of the sanction" should not be the subject of *de novo* review. 2 *U.S. Code Congressional and Administrative News* (1977) 2327. While this intent was not reflected in a statutory change, the courts should doubtless defer to agency action that is inherently "highly discretionary," such as determining the length of a period of disqualification or the amount of a civil penalty. *Id.* No particular reason to remand for a further agency opinion on the hardship determination exists in this case, however. The agency view differs implicitly from the Court's interpretation, since the Department generally reserves a hardship finding to cases in which food stamp users will be required to *drive* a great distance, as in rural areas. This limited concept of hardship is, in the Court's view, wrong as a matter of law.

The reason for the 1977 Congressional action is not difficult to discern. A monetary penalty is closely targeted to the offender, whereas a program disqualification presents inconvenience (at least) to all food stamp users, regardless of whether the particular users have abused the program. Program disqualification is inherently harsh, when applied to people dependent on a particular grocery store.

If the Department wishes to develop general guidelines rather than leaving the hardship determination to individual studies, the Court suggests suitable considerations. The regulatory definition of "hardship" (7 C.F.R. 278.6(9)) appears to be appropriate in its reference to the availability of comparable stores "in the area." "The area," however, can be defined in terms of a one-mile radius only if a store's customers are, for practical purposes, confined to motor vehicle users. A much narrower radius is appropriate if a significant number of users are pedestrians. A "nearby store" for those individuals would be defined in terms of several blocks. Unless no material use of the store is made by pedestrians, therefore, as in a shopping center remote from pedestrian traffic, it would seem to be necessary to impose a monetary penalty rather than disqualification, unless a comparable store operates within a range of several blocks. Only by so viewing the "area" served by competing stores can Congressional intent be followed and customers' needs be realistically considered.

Counsel for FNS argues that this result is too lenient where the offending grocery store is part of a chain, and food stamp usage produces large revenues. Congress has currently chosen a $5,000 maximum penalty. If the maximum is too low, Congress can doubtless be persuaded to correct the situation. In this case, however, the agency is hardly in a position to complain, as its regulations do not approach the authorized penalties. Moreover, a penalty might be imposed for each unauthorized sale, which would greatly increase the exposure here, where defendants proved some four violations.

The Court is sensitive to the government's complaint that it is not giving appropriate deference to the agency's expertise. The Court would be delighted to defer to such expertise, if it were demonstrated in argument or in proof, or even in likelihood from the agency's mission. But there is little indication that FNS has developed expertise as a social service agency, or that it has established criteria or a "feel" for hardship evaluation among its clientele.

The best that can be said for the testimony of Mr. King is that he is probably right in asserting that most food stamp users can obtain transportation to shop elsewhere. But hardship must be determined from the likely effect on a significant number of individuals, and it is meaningless that a majority or even two-thirds of the food stamp users can manage with minor inconvenience. The agency's obvious lack of interest in small minorities who may suffer from its action evidences some callousness, rather than expertise. It would be an exaggeration to say the agency is working from a stereotype of the Welfare Queen with her Cadillac, but neither evidence nor argument shows much to the contrary.

The Court will affirm the Department's finding of violations, but will reverse the finding of no substantial hardship. While the Court might be able to determine the proper monetary penalty from the regulations, that determination is better left to agency consideration.

### III.

### PROOF OF VIOLATIONS

The Court ruled from the bench that the government had sufficiently proved violations of the program by plaintiff's acceptance of food stamps in exchange for non-food items. The evidence need not be reviewed in detail. On several occasions in the last six months of 1978, the government initiated testing by purported shoppers employed by the government. Non-food items were sold by three cashiers, one on two occasions. The parties presented conflicting testimony from the cashiers and the testing witnesses. However, the testimony of the test shoppers was verified by their supervisors, who remained on the parking lot during the tests. While the cashiers were not obviously incredible or impeached, their recollections were necessarily vague, as the violations were not charged until some months later. It is difficult to avoid the conclusion that the cashiers developed convenient memories. The testing witnesses had little inducement to prevaricate, and

their testimony was confirmed by supervising agents of FNS who had good testimonial knowledge of acquisitions made by the testers.

The Court concludes that the government has established four violations.

## IV.

## COSTS OF PROOF CHARGED TO PLAINTIFF

■ We turn to defendants' claim for recovery of costs in proving, through non-resident witnesses, that they supervised the testers and received non-food items obtained by the testers in return for food stamps. Defendants seek travel expenses of three witnesses, together with attorneys' fees for preparing and presenting their testimony.

Prior to trial, defendants sought approval by the Court of the costs to be incurred, preparatory to making a claim under Rule 54, F.R.Civ.Proc.[6] Defendants noted that the late Judge Duncan of this Court had suggested that pre-trial authorization should be sought. *Brookside Theatre Corp. v. Twentieth Century-Fox Film Corp.,* 11 F.R.D. 259, 267 (W.D.Mo.1951). More pertinent to the present ruling is Judge Duncan's statement that "witness fees may not be taxed as costs beyond 100 miles from the place of the trial." *Id.* at 269. In a more current decision, Judge Hunter of this Court did allow recovery of mileage of an expert witness from outside the 100-mile zone, noting, however, that only exceptional circumstances will authorize such an allocation of costs. *Esler v. Safeway Stores, Inc.,* 77 F.R.D. 479, 481–2 (W.D.Mo.1978).

We need not decide the issue under Rule 54, however, because defendants have, in the alternative, sought recovery under Rules 36 and 37(c), F.R.Civ.Proc., which include both expenses and attorneys' fees. Rule 37(c) provides that "[i]f a party fails to admit the ... truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves

... the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making the proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable ..., (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable grounds to believe that he might prevail on the matter, or (4) there was other good reason for the failure to admit."

Rule 37(c) serves a specific function: simplification of issues for trial, in order to eliminate wasted trial time both for the litigants and the Court. "[P]arties to litigation should not consume time at trial, or be put to expense in making proof of evidentiary, or ultimate facts appearing in a case that are not substantially contested." *Jones v. Boyd Truck Lines,* 11 F.R.D. 67, 69 (W.D.Mo.1951). *See also Knowlton v. Atchison, T. & S.F. Railway Company,* 11 F.R.D. 62 (W.D.Mo.1951). "A party called upon to respond to requests" under Rule 36 must "determine at the peril of the sanctions provided in Rule 37(c), what sort of answers he will make ...." *Jones, supra,* 11 F.R.D. at 70. Those sanctions include an award of costs and fees.

Plaintiff contends that the government's witnesses failed to testify in accordance with the requested admissions. However, the out-of-town witnesses' testimony at trial contained no material variances from the requested admissions. The three individuals, all government employees, testified concerning the general procedures followed in investigations of possible food stamp violations. In addition, all three described details of the "passes" at plaintiff's store which resulted in the finding of violations.

The discrepancies upon which plaintiff relies to justify its failure to admit are minor, and had no effect on the outcome of the trial on the issue of violations. For example, the requested admissions stated

---

6. Rule 54(d) provides that "[e]xcept when express provision therefor is made either in a statute ... or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs ...."

that two witnesses would testify that they had received all food coupons and cash from the individuals who attempted the illegal purchases before those persons entered plaintiff's store. At trial, those witnesses instead testified that they had instructed the shoppers to take no personal food stamps or cash into the store. In addition, the "shoppers," Ms. Porter and Ms. Davis, testified that they carried no money or personal belongings into the store with them. Plaintiff's disagreement with the requests for admissions was minor, and not something that would have affected the trial's outcome.

As the plaintiff states in its opposition to the fee request, Rule 36 "is aimed at eliminating undisputed contentions, and thereby [limiting] the issues to be tried by the Court." Plaintiff was not asked to stipulate to the occurrence of violations, but only to the content of the three witnesses' testimony. Plaintiff's refusal was not based on any stated reason to doubt the direction of the testimony (which could have been verified by deposition, affidavit or even a conference telephone interview), but was apparently motivated by a decision to hold defendants to "strict proof" and to subject the witnesses to cross examination. There was in fact no substantial cross examination at trial.

While plaintiff may have been unable to agree with the exact wording of defendants' requests for admission, some alternate wording or stipulation was clearly feasible. It cannot be said that the material in the testimony was "substantially contested." Rule 37(c) is appropriately invoked in this case, as a disincentive to such unnecessary failure to stipulate or admit.[7]

While plaintiff vigorously opposes the cost and fee award, it does not challenge the statement of costs defendants submitted. The amount requested appears reasonable, and is well-supported. The requested hourly fee of $75.00 per hour does not exceed a reasonable rate for attorneys in this area, and the number of hours billed is not excessive. Accordingly, for the reasons discussed above, it is hereby

ORDERED that this matter is remanded to the Department of Agriculture for a determination of the proper monetary penalty to be imposed. It is further

ORDERED that defendants are enjoined from disqualifying plaintiff's store from participation in the food stamp program for the violations at issue in this case. It is further

ORDERED that defendants' motion for costs and attorney fees is granted, in the amount of $1,958.09. Except as herein provided, each party shall bear its own costs.

---

judgment motions cannot be evaded by such tactics as reliance on pleadings, general assertions or denials without a specific evidentiary basis for the respondent's position, or statements of mere expectations about the evidence. *E.g. Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981). Rule 36 also requires forthcoming responsiveness, if the costs of evasiveness are not to be taxed to the respondent.