AMERICAN COMMUNITY STORES, INC., d/b/a Hinky Dinky Super Markets, Inc., a Texas corporation, Plaintiff,

v.

UNITED STATES of America and John Block, Secretary of Agriculture, Defendants.

No. CV. 83–0–334.

United States District Court,
D. Nebraska.

Nov. 17, 1983.

Rodney S. Sederstrom, Omaha, Neb., for plaintiff.

David A. Kubichek, Asst. U.S. Atty., Omaha, Neb., for defendants.

## MEMORANDUM OPINION

SCHATZ, District Judge.

This case is an action for judicial review brought by the plaintiff in which it petitions this Court to review the validity of an administrative decision of the Secretary of Agriculture, acting through the Food and Nutrition Service, which imposed a civil

money penalty upon American Community Stores for violation of the Food Stamp Program. Pursuant to a stipulation of the parties, this Court stayed imposition of the penalty pending the outcome of this review. This case is ready for decision now on defendants' motion for summary judgment. After careful review of the briefs and other documents filed in support of and in opposition to the motion, the Court concludes the motion is well taken and should be granted.

The facts are these. The affidavits of two investigative aids from the Food and Nutrition Service (FNS) and related correspondence between the agency and American Community Stores, d/b/a Hinky Dinky Super Markets, establishes that, at all times relevant to this case, Hinky Dinky Store No. 39 was authorized to participate in the Food Stamp Program. On September 19, 1980, a letter was sent to the plaintiff reminding it that federal regulations allow acceptance of food stamp coupons only in accordance with such regulations, that special care should be taken to prevent violations which could result in disqualification from the Food Stamp program and that the plaintiff was responsible for any violations committed by any of its employees. On the dates of September 3, 1982, September 4, 1982, and September 7, 1982, one of the FNS investigative aids, Pamela Siddiq, purchased several non-food items, including beer, at Hinky Dinky Store No. 39. On September 7, 1982, James Yanatsis also purchased non-food items, including beer, at that same store. Based upon these violations as detailed in the affidavits of the two investigative aids, by letter dated December 20, 1982, the FNS imposed a civil money penalty upon the plaintiff. On April 18, 1983, this penalty was upheld by the FNS food stamp review officer. American Community Stores comes to this Court to appeal its $20,000 civil penalty.

The Food Stamp Act of 1977 governs the law to be applied to this case. Although the statutes have been amended since 1977, the amendments became effective after the events arose which are the subject of the present action. Title VII, Section 2020 of the United States Code provides that an approved retail food store may be disqualified from participating in the food stamp program upon a finding that such store has violated the provisions of the Food Stamp Act. The statute provides that such disqualification shall be for a period of time determined under appropriate regulations. The relevant regulations are found at 7 C.F.R. § 278.6 and § 279.10. Section 278.-6(a) generally provides that the FNS may disqualify any authorized retail food store from participation in the food stamp program for a reasonable period of time not to exceed three years, as FNS may determine. In making a determination as to disqualification, Subsection (d) states that the FNS shall consider: (1) the nature and scope of the violations committed by the personnel of the company; (2) any prior action taken by FNS to warn the company about the possibility of violations occurring; and (3) any other evidence that shows the company meant to violate the regulations.

The specific penalties which the FNS may impose are provided in Subsection (e), parts of which are relevant to the present case:

(e) Penalties. FNS shall take action as follows against any firm determined to have violated the Act or regulations. The FNS regional office shall:

(1) Disqualify the firm for 3 years if the firm has committed flagrant violations of this part, such as buying large amounts of coupons or trafficking in ATP cards, which have resulted in major diversions of food stamps from their intended purpose.

(2) Disqualify the firm for 1 year if: (i) The evidence shows that: (A) It is the firm's policy to sell expensive or conspicuous nonfood items, cartons of cigarettes, or alcoholic beverages, in exchange for food coupons, and the firm has engaged in such practices, or

(B) The firm bought coupons at discount, and

(ii) The firm was warned about the possibility that violations were occurring and of the possible consequences of violating the regulations. The regional of-

fice may disqualify a firm for 1 year, even though the firm was not warned about the possibility that violations were occurring, if the regional office finds that the firm has committed unusually serious violations of the kind described in (e)(2)(i)(A) or (B) of this paragraph.

(iii) The evidence shows that the firm's coupon redemptions for a specified period of time exceed its food sales for the same period of time.

(3) Disqualify the firm for 6 months if:

(i) The evidence shows that it is the firm's policy to commit violations such as the sale of common nonfood items in amounts normally found in a shopping basket and the firm was warned about the possibility that violations were occurring and of the possible consequences of violating the regulations, or

(ii) Violations such as those described in (e)(2)(i)(A) or (B) of this section occurred but FNS has not specifically warned the firm that violations are occurring and of the possible consequences of violating the regulations.

(4) Disqualify the firm for 90 days if the ownership or management personnel of the firm have committed violations such as described in paragraph (e)(3)(i) of this section, and there is no indication that FNS has specifically warned the firm about the possibility that violations are occurring and of the possible consequences of violating the regulations.

(5) Disqualify the firm for 60 days if the evidence shows that violations such as those described in paragraph (e)(3)(i) of this section occurred, but that the violations resulted from carelessness or poor supervision by the firm's ownership or management.

(6) Disqualify the firm for 30 days if the evidence shows that:

(i) Violations such as those described in paragraph (e)(3)(i) of this section occurred as a result of carelessness or poor supervision by the firm's ownership or management, but FNS has not specifically warned the firm about the possibility that violations are occurring and of the possible consequences of violating the regulations, or

(ii) The violations are limited in nature and scope, and FNS has made a specific attempt to warn the firm that violations may be occurring and of the possible consequences of violating the regulations.

(7) Send the firm a warning letter if violations are too limited to warrant a disqualification.

Section 278.6(g) sets out the criteria for imposing a civil money penalty in lieu of disqualification. That subsection provides that the FNS may impose a civil penalty only when the firm subject to a disqualification is selling a substantial variety of staple food items and the firm's disqualification would cause hardship to food stamp households due to lack of any other comparable authorized retail food store in the area. Subsection (h) provides for a formula to be used to compute the amount of the civil penalty. At any rate, the civil money penalty may not exceed $5,000 for each violation of the Food Stamp Act.

If aggrieved by a decision of the Food Stamp Review Officer, a retail food store may appeal the determination by filing a complaint in the United States District Court. As provided in C.F.R. § 279.10(c), the suit is a trial de novo in which the Court shall determine the validity of the challenged administrative action.

DISCUSSION

In considering a summary judgment motion, "the court is required to view the facts in the light most favorable to the party opposing the motion and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits filed in the case." *Cassidy, Inc. v. Peter Hantz, et al.,* 717 F.2d 1233 at 1235 (8th Cir.1983).

With this in mind, an analysis of the present case may be made. The appropriate standard of review of an action by the Department of Agriculture under the Food Stamp Act was clearly established by the Eighth Circuit Court of Appeals in *Studt v. United States,* 607 F.2d 1216 (8th Cir.1979). In that case, the Eighth Circuit

adopted the Fourth Circuit's position set out in *Cross v. United States*, 512 F.2d 1212 (4th Cir.1975) (*en banc*), which recognized that the district court is authorized to conduct a de novo review of the validity of the Department of Agriculture's determination that the Food Stamp Act has been violated. However, a more limited scope of review applies when the administrative determination that a violation has occurred is found to be valid and the actual challenge is to the sanction imposed on the violator of the act. The Eighth Circuit's position in this regard is that "the district court must limit its review to a determination of whether the sanction imposed on the violator is arbitrary and capricious." 607 F.2d at 1218. In underscoring this position, the Eighth Circuit further said:

> When violation of the Food Stamp Act is admitted, the district court is not authorized under § 2023 to substitute its judgment for that of the Department of Agriculture in determining the appropriate sanction to be imposed for violation of the Act. Only when the Department of Agriculture has acted in an arbitrary and capricious manner in imposing a sanction may the district court alter the sanction. *Id.*

Therefore, in reviewing the action taken against American Community Stores in the present case, a two-prong review is necessary.

■ In regard to the first required analysis, namely, whether a violation of the Food Stamp Act occurred, American Community Stores, in its brief in opposition to the motion for summary judgment, makes several arguments on its own behalf. First, American Community Stores argues that there is no evidence that there existed a "firm policy" to sell expensive or conspicuous non-food items. In its investigation, the FNS made four attempted purchases of non-food items, and all four were successful. As a result, the FNS determined that this established "firm policy." The record on this matter consists of affidavits by the two investigative aids specifying the types and prices of non-food items purchased on the four shopping trips. In addition, the record consists of a letter from Robert J. Higginbotham, Chief of the Coupon Use

and Redemption Section of the Family Nutrition Programs, and one from James A. Ramsey, an Administrative Review Officer. Both men are in agreement as to the following facts. The violations in question consisted of sales by four different cashiers of Hinky Dinky Store No. 39 on four occasions. On each occasion, the items purchased included beer and household products. No clerk refused to sell any item when presented with food coupons. In addition, the violations occurred during normal operation of the store. Finally, the warning letter dated September 19, 1980 informed American Community Stores about the possibility that violations were occurring and warned of possible consequences of further violations. In response, American Community Stores argued, and does so in renewal now, that management took great steps to train its employees in proper handling of food stamps and that, since the 1980 warning letter was issued, three managers had come and gone at that particular store. These arguments were rejected by the FNS and appear to have no merit at the present time either.

■ In *Milgram Food Stores, Inc. v. United States*, 558 F.Supp. 629 (W.D.Mo. 1983), the district court, in review of an administrative suspension from the food stamp program, had no problem in finding that the government had established four violations of the Food Stamp Act and that such was sufficient to warrant a finding by the FNS that four violations constituted "firm policy." In addition, it is clear in the Eighth Circuit that a corporation is responsible for the acts of its agents even though the acts are committed without the knowledge of the officers of the corporation. *United States v. United States Cartridge Co.*, 198 F.2d 456 (8th Cir.1952). Therefore, although American Community Stores may have made commendable efforts to adequately train its employees, the fact that violations occur is the only relevant consideration in determining whether to impose a sanction.

American Community Stores also challenges the sufficiency of the warning letter sent in September, 1980, alleging that the letter was too remote in time to provide

adequate notice and that, subsequent to its receipt, management at that store had changed hands three times. The record as developed in the administrative proceedings in this case indicates that since Hinky Dinky Store No. 39 was authorized to participate in the food stamp program in November, 1971, program personnel visited the store on several occasions to discuss program requirements with store employees. In reaction to concern by the FNS field office that violations might be occurring at that particular store, a special visit was paid by FNS personnel on September 16, 1980, to further stress the importance of strict compliance. The letter which is in issue was sent in confirmation of that September 16 meeting. A letter was not only sent to the current store manager, but a copy was sent to Hinky Dinky headquarters. The letter was responded to by an official at Hinky Dinky headquarters. As a result of these events, the FNS determined that the change in store managers was irrelevant and that the letter was not so remote in time as to negate adequate warning. On a practical level, it appears quite clear that the FNS should not be required to babysit every store participating in the food stamp program. The record discloses that the FNS responded to suspicion of food stamp violations occurring at Hinky Dinky Store No. 39 by way of that special meeting and letter in September, 1980. Both present store management and officials at local headquarters had adequate warning. Regulations prescribing FNS duties neither require the sending of periodic warning letters nor require the FNS to specially train store employees in proper food stamp procedures. Finally, counsel for American Community Stores admitted in correspondence made a part of the record that four violations which are the subject of this proceeding did in fact occur. Therefore, it appears clear that there is substantial evidence on the record to sustain the finding by the FNS that the violations complained of did occur.

The second matter to be addressed by this Court regards the penalty imposed by the FNS. As stated previously, the sanction must be upheld unless this Court finds that it rises to a level of being arbitrary and capricious. Title 7, Code of Federal Regulations § 278.6(g) provides for civil money penalties not to exceed $5,000 for each violation of the Food Stamp Act. Facially, therefore, penalties totaling $20,000 do not exceed the maximum allowed under the regulations for four violations.

Nevertheless, this Court must review the actions of the FNS to determine if they were done in an arbitrary and capricious manner. In this case, the FNS originally imposed a one-year suspension for participation in the food stamp program. However, the suspension was changed to a monetary fine after it was determined that the suspension would cause hardship to food stamp households in the area. It is in regard to the penalty imposed that American Community Stores lodges its primary complaint.

American Community Stores argues that the original one-year disqualification was not warranted by the facts of this case. Specifically, the company asserts that there was no firm policy to sell ineligible products in exchange for food stamps. However, this argument has been dealt with in the liability discussion above. Further, American Community Stores argues that it should only have received a thirty or sixty day disqualification under 7 C.F.R. § 278.-6(e)(5) and (6). Those sections are also set out above. Although, in hindsight, the shorter disqualification may have been in order, this Court may not freely substitute its own judgment for that of the FNS.

Based upon the existence of four separate violations, which was sufficient to find liability in *Milgram Food Stores, Inc. v. United States*, 558 F.Supp. 629 (W.D.Mo. 1983), the decision of the FNS once again is supported by substantial evidence and it reasonably could have concluded that there existed a store policy.

The question of civil money penalties addresses itself to the hardship of food stamp users in the area. As the Court in *Milgram* stated:

Individuals suffer hardship, and the Court has no doubt that Congress intended that the agency impose penalties rath-

er than disqualification if significant numbers of individuals would suffer a hardship if their neighborhood grocery store were to be disqualified from the food stamp program.

558 F.Supp. at 633.

The record in this case discloses that Hinky Dinky Store No. 39, at the time that these violations in question occurred, averaged approximately $35,881 in food stamp sales per month, which amounted to about 18.5 per cent of total food sales. In addition, the nearest comparable authorized store is located one mile east and two miles west of Hinky Dinky Store No. 39. It is clear on the face of the record that a significant number of individuals would have suffered hardship had Hinky Dinky Store No. 39 been disqualified from participation in the program for one year. As a result, the FNS imposed a civil money penalty. In *Milgram,* the court found that hardship imposed on as little as five per cent of total shoppers constitutes the kind of hardship contemplated by Congress. Citing to the Congressional history of the Food Stamp Act, the Court quoted that fines

> should normally be imposed instead of disqualification * * *. This would benefit all three major participants in the program—consumers, businesses and the Department itself. Consumers would not lose the convenience of nearby stores * * *."

*Id.,* quoting from 2 U.S.Code Cong. & Ad.News, 1704, 2326 (1977).

The Court in *Milgram* stated further that the congressional history of the Act indicated that the severity of the sanction should not be subject to de novo review. Although the Court recognized that such intent was not reflected in a statutory change, "the courts should doubtless defer to agency action that is inherently 'highly discretionary' such as determining the length of a period of disqualification or the amount of a civil penalty." *Id.* In *Milgram,* the Court actually rejected the one-year disqualification of the store since the FNS had not made a hardship finding and a determination as to whether a civil penalty should have been imposed. The case was, therefore, remanded for this determination,

and in this regard, the Court pointed out, "Moreover, a penalty might be imposed for each unauthorized sale, which would greatly increase the exposure here, where defendants proved some four violations." *Id.* at 634. The bottom line appears to be that not only are civil money penalties allowed under the regulations, but they are encouraged.

The regulations governing the imposition of civil penalties by the FNS specifically allow for fines of up to $5,000 for each violation. Given the fact that the violations imposed in this particular case were within the amount allowed by the regulations, and the fact that the violations included sales of beer and other obviously ineligible foods, it seems clear that the actions of the FNS in this situation do not rise to a level of being arbitrary and capricious. In fact, the civil penalty serves to fulfill the purposes of the Food Stamp Act more readily than would a disqualification. With the civil penalty, the violator itself is punished for its wrongdoing. However, a disqualification would serve to injure the consumer, those individuals which the Act was designed to aid.

The propriety of granting a summary judgment motion in the context of an appeal from a decision of the FNS has been decided by other courts. In *Kulkin v. Bergland,* 626 F.2d 181 (1st Cir.1980), the First Circuit Court of Appeals addressed an appeal from the district court's granting of the government's motion for summary judgment. In that case, store management did not deny that any of the alleged purchases had taken place. In addition, it did allege that it personally did not engage in any of the violations and did not know that the employees were selling ineligible products. The First Circuit held that the store failed to "set forth specific facts showing that there is a genuine issue for trial." Thus, summary judgment was granted as to liability. The present case is similar in that no denial of the violations was made by American Community Stores and the company asserted that it had no actual knowledge. The First Circuit also upheld the administrative sanctions, recognizing that review of that aspect is limited.

In *Marbro Foods, Inc. v. United States,* 293 F.Supp. 754 (N.D.Ill.1968), the district court granted the government's motion for summary judgment, stating that there was substantial evidence on the record to support the agency sanction.

In conclusion, there is substantial evidence in the record to support the finding by the FNS that four violations occurred at Hinky Dinky Store No. 39. In addition, the FNS found that the one-year period of suspension would cause hardship to food stamp users in the area of the store. Therefore, a $5,000 penalty for each violation was imposed in lieu of suspension. This civil penalty is clearly allowed under the regulations governing implementation of the Food Stamp Act and the evidence fails to disclose any arbitrary and capricious actions in imposition of the fines.

Since the record indicates no genuine issue for trial, summary judgment is granted for the government in this case. A separate order granting the same and dismissing the case is filed herein this day.